No. 83,495

JOSEPH D. JOHNSON, *Appellant*, v. STATE OF KANSAS, *Appellee*.
(24 P.3d 92)

Opinion filed June 1, 2001.

B. *Kay Huff*, of Lawrence, was on the brief for appellant.

*Joseph W. Lentz*, assistant district attorney, *Joan Hamilton*, district attorney, and *Carla J. Stovall*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: Joseph Johnson appeals the denial of his K.S.A. 60-1507 post-conviction motion. Johnson waived his right to a jury trial. He was convicted of first-degree murder, conspiracy to commit first-degree murder, aggravated burglary, contributing to a child's misconduct, criminal solicitation, unlawful discharge of a firearm at an occupied building, and aggravated intimidation of a witness. His appeal was affirmed in *State v. Johnson*, 258 Kan. 61, 899 P.2d 1050 (1995). Johnson filed a pro se motion to correct his sentence and to challenge his alleged illegal bench trial. The district court considered Johnson's submission as a K.S.A. 60-1507 motion. Johnson argues that he did not voluntarily waive his right to a jury trial. The district court held a hearing to decide whether counsel should be appointed and whether further relief was required. After hearing testimony, the district court summarily denied Johnson's motion.

Our jurisdiction is under K.S.A. 22-3601(b)(1) (a conviction resulting in a hard 40 sentence is reviewed by this court).

The question is whether the district court erred by denying Johnson's motion.

Finding no error, we affirm.

## DISCUSSION

We have said by court rule:

"[A] proceeding under K.S.A. 60-1507 cannot ordinarily be used as a substitute for direct appeal involving mere trial errors or as a substitute for a second appeal. Mere trial errors are to be corrected by direct appeal, but trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal, provided there were exceptional circumstances excusing the failure to appeal." Rule 183(c)(3) (2000 Kan. Ct. R. Annot. 210-11).

The parties correctly state that a defendant has a constitutional and statutory right to a jury trial. U.S. Const., 6th Amend; Kansas Const. Bill of Rights, §§ 5, 10; K.S.A. 22-3403. Here, Johnson provides no exceptional circumstances regarding his failure to include this constitutional issue in his 1995 direct appeal.

The standard of review of a denial of a K.S.A. 60-1507 motion is whether the district court's findings are supported by substantial competent evidence and whether the findings are sufficient to support the district court's conclusions of law. *Taylor v. State,* 252 Kan. 98, 103, 843 P.2d 682 (1992). We discussed the test for determining the validity of a jury trial waiver in *State v. Irving,* 216 Kan. 588, 589, 533 P.2d 1225 (1975).

Before Johnson waived his right to a jury trial, he was questioned outside the presence of the jury. Johnson's attorney asked him whether he understood his waiver:

"Q: Now, you understand that you have a right to go before 12 people to have your case tried?
"A: Yes, I do.
"Q: You understand that that jury, those 12 people, we're ready to pick them, I'm ready, we've got people outside to pick a jury? Do you understand that?
"A: Yes, sir.
"Q: Do you understand that my colleague Mr. Debenham [prosecutor] is ready to question the jury too? You understand—do you understand that?
"A: Yeah.
"Q: All of us are willing to go out and try this to the jury. Do you understand that?
"A: Yes.
"Q: Now, it is my understanding that you are willing to give up your right to a jury trial; is that right?
"A: That's right.
"Q: That means that you would not be tried by 12 people but would be tried by one person.

"A: That's—
"Q: You understand that? And that one person would be Judge Dowd; do you understand?
"A: I understand that.
"Q: Now you and I just talked about it, oh, 15 minutes ago, correct?
"A: Yeah.
. . . .
"Q: So you're willing to try your case to the Judge?
"A: To the Judge. That's right.
. . . .
"Q: All right. Now, something else. The Judge will decide if you are guilty or not guilty. Do you understand that?
"A: I understand. He got a right.
. . . .
"Q: All right. Now, knowing all of those things, do you give up—it's called 'waive,' but give up your right to a jury trial on the guilt phase, the guilt part of the trial? Will you do that—
. . . .
"A: Yeah, I give up my right because I got more confidence in the, in the Judge than it is the jury."

The district judge asked Johnson if he had enough time to think about this decision, and Johnson replied, "Yes, I had enough time to think about it." When the judge asked him if he had any pressure put upon him to do this, Johnson said, "No, I didn't have any pressure at all. I just really thought that it would be better for you, the Judge, being than [*sic*] the 12 jurors. In fact, I have more confidence in you than I do the jury."

At the post-conviction hearing, the district court heard testimony from Johnson, defense counsel, and a legal associate with the defense counsel's law firm. Johnson testified that he never waived his right to a jury trial. He also said that he was diagnosed "borderline" retarded and had no understanding of waiving his right to a jury trial. Johnson testified:

"Well, I couldn't have because I didn't know anything about waiving a jury. I had never been in trouble before. I never had any dealing with the law. I never had any dealing with the law. And I could not have waived my jury because I didn't know nothing about the jury."

He denied having talked to his attorney or anybody else about waiving his right to a jury trial. The record shows that before trial,

the district court had ordered a mental evaluation. The district court adopted the examining doctor's findings that Johnson was competent, able to understand the charges against him, and able to cooperate with counsel in his own defense.

Defense counsel testified that he had talked to Johnson several times about having a bench trial or a jury trial. He said Johnson had known that he had a right to a trial before 12 people and that those people would decide his guilt or innocence. Counsel further testified that Johnson understood "everything I talked about." Counsel said he put off the final decision to waive the jury until the day of trial to make sure that Johnson was sure of his decision.

An associate with defense counsel's law firm also testified and agreed that Johnson discussed ideas for his own defense. She said that she was present twice when defense counsel discussed with Johnson the subject of waiving his right to a jury trial.

*State v. Stuber*, 27 Kan. App. 2d 160, 164, 1 P.3d 333, *rev. denied* 269 Kan. 940, *cert. denied* 148 L. Ed. 2d 275 (2000), upheld a waiver of the right to a jury trial. The *Stuber* court found substantial competent evidence supported a finding that Stuber's waiver was voluntary because the district court told him the rights he was waiving by having a bench trial, and Stuber orally indicated on the record he wanted to waive his right to a jury trial. 27 Kan. App. 2d at 165.

Here, Johnson was informed of the rights he was waiving by having a bench trial. He said on the record that he wanted to waive his right to a jury trial. At the pretrial hearing, the district court asked him if he had enough time to make this decision and if he felt pressured to make the decision. Johnson said he had enough time to decide and that he felt no pressure. He said he felt more confident in having his case tried before a judge, rather than a jury.

Substantial competent evidence supports the district court's decision to summarily deny Johnson's post-conviction motion.

Affirmed.