**Sheldon K. NASH, Petitioner–Appellant,**

v.

**David R. McKUNE, Warden; Attorney General of the State of Kansas, Respondents–Appellees.**

No. 01–3254.

United States Court of Appeals, Tenth Circuit.

Aug. 12, 2002.

Before MURPHY, ANDERSON, and HARTZ, Circuit Judges.

## ORDER AND JUDGMENT *

HARTZ, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Sheldon K. Nash appeals the district court's order denying his petition for a writ of habeas corpus. For Nash to proceed on appeal, he must obtain a certificate of appealability (COA). *See* 28 U.S.C. § 2253(c)(1)(A). We may grant him a COA only if he "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). This demonstration "includes showing that reasonable jurists could debate whether . . . the petition

should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (internal quotation marks and citation omitted).

Nash was convicted by a Kansas state court jury of aggravated robbery and felony murder. He received a life sentence for the felony murder and a concurrent sentence of 206 months in prison for the aggravated robbery conviction. The Kansas Supreme Court affirmed his convictions on direct appeal. *State v. Nash,* 261 Kan. 340, 932 P.2d 442 (Kan.1997). He subsequently filed a state habeas petition under Kan. Stat. Ann. § 60–1507, which was denied. The Kansas Court of Appeals affirmed the denial. Nash then filed this petition for a writ of habeas corpus in federal court.

In his federal habeas petition, Nash raised fourteen issues. He renews each of these issues on appeal. Five of these issues previously were raised in his direct appeal to the Kansas Supreme Court. The remaining nine issues were raised in his state habeas petition.

### I. Issues raised on direct appeal

We address first the issues considered and decided by the Kansas Supreme Court in Nash's direct appeal. We may not grant Nash habeas relief with respect to a claim adjudicated on the merits by the state court unless the adjudication

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Feder-

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

al law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). On some of these issues it is not clear that they were fairly presented to the state court as federal constitutional claims, as opposed to matters of state law. *See Hale v. Gibson,* 227 F.3d 1298, 1327 (10th Cir.2000) (requiring fair presentation of federal constitutional basis for claims). Nevertheless, we will assume that they were so presented. By doing so, we benefit Nash because it is certain that the federal issues would have been properly defaulted on procedural grounds in the state habeas proceeding if they were not raised on direct appeal. *See Hain v. Gibson,* 287 F.3d 1224, 1240 (10th Cir.2002) (applying anticipatory procedural default to dispose of issue). Our review of these claims reveals that none merits a COA.

### 1. Aiding and abetting instruction

█ Nash contends that the aiding and abetting instruction given at his trial was erroneous because it did not instruct the jury to find beyond a reasonable doubt that he aided and abetted the crimes. The state court rejected this argument, reasoning that the effect of the aiding and abetting instruction had to be considered in light of the other instructions, including the reasonable doubt instruction, and that taken as a whole, the instructions would not have misled the jury into believing that it need not find Nash guilty beyond a reasonable doubt. *Nash,* 932 P.2d at 443–45. For the same reasons provided by the Kansas Supreme Court, we discern no constitutional error under the Supreme Court's decisions in *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and its progeny. We conclude that

Nash has failed to show that the state court's decision was contrary to or involved an unreasonable application of clearly established federal law or was an unreasonable determination of the facts in light of the evidence presented.

### 2. Evidence of gang membership

Nash next contends that he received an unfair trial because the prosecutor presented evidence concerning gang membership, in violation of an order in limine that gang evidence would not be admitted. In the decision on Nash's direct appeal, the Kansas Supreme Court incorporated by reference its decision on this point in *State v. Aikins,* 261 Kan. 346, 932 P.2d 408 (Kan.1997), the appeal of Nash's co-defendant, Robert Aikins. *See Nash,* 932 P.2d at 445.

In *Aikins* the Kansas Supreme Court determined that the prosecutor's elicitation of evidence concerning a "rival group" and the "Bloods gang" violated the court's order in limine. *Aikins,* 932 P.2d at 428–32. The references, however, were not so prejudicial as to require a mistrial. *Id.* Complaints concerning other comments allegedly violating the order in limine, including a reference to an assault rifle ("AK–47"), and to Aikins' "saggin' and baggin' lifestyle," had been raised for the first time on appeal and were therefore procedurally barred from consideration. *Id.* at 432–33. Finally, the court determined that references to a hat marked with the words "Thug Life" and to Aikins' carved eyebrows and cornrowed hair did not violate the order in limine and did not justify a mistrial. *Id.*

█ "State court rulings on the admissibility of evidence may not be questioned in federal habeas proceedings unless they render the trial so fundamentally unfair as to constitute a denial of federal constitu-

tional rights." *Duvall v. Reynolds*, 139 F.3d 768, 787 (10th Cir.1998) (internal quotation marks omitted). Here, the state courts decided that admission of evidence concerning gang membership did not deprive defendant of a fair trial. Upon careful consideration of Nash's argument, we conclude that he has failed to show that this decision was contrary to or involved an unreasonable application of clearly established federal law or was an unreasonable determination of the facts in light of the evidence presented.

### 3. Voir dire concerning bias against African–Americans

Nash is an African–American; the victim in this case was white. Nash contends that all the members of the jury panel should have been questioned separately about their racial prejudices through the use of sequestered voir dire or written questionnaires.

In *Aikins* the Kansas Supreme Court discussed the arguments on the voir dire issue raised by both Nash and Aikins. *Aikins*, 932 P.2d at 425–27; *see also Nash*, 932 P.2d at 445. The court concluded that the trial court's denial of the request for individual voir dire had not been "arbitrary, fanciful or unreasonable" and would therefore be upheld. *Aikins*, 932 P.2d at 427. It noted that although jurors were not questioned individually concerning racial prejudice, counsel had encouraged jurors to approach the bench during recesses in the proceedings if they suspected that they were prejudiced against Nash because he is black. *Id.* In the court's view this was a sufficient avenue to deal with prejudices that potential jurors did not want to voice in front of the entire jury pool. *Id.*

When there is a "constitutionally significant likelihood" that state court jurors may be prejudiced against a criminal defendant on account of his race, the Fourteenth Amendment requires that jurors be interrogated on the subject of racial prejudice. *Ristaino v. Ross*, 424 U.S. 589, 596, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976); *see also Ham v. South Carolina*, 409 U.S. 524, 527, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973). A trial judge has broad discretion, however, to determine the form and number of questions to be asked on the subject. *Ham*, 409 U.S. at 527.

■ Nash's counsel, the prosecution, and the court all asked voir dire questions about racial bias. Nash's counsel urged jurors to approach the bench to confer privately with the trial judge during a recess if they did not wish to disclose their feelings about racial bias to the remainder of the jury panel. Nash has failed to show that the state court's conclusion regarding the adequacy of the voir dire to uncover racial prejudice was contrary to or involved an unreasonable application of clearly established federal law or was an unreasonable determination of the facts.

### 4. Issues relating to reasonable doubt instruction

Two of Nash's issues relate to the reasonable doubt instruction given in his case. First, he complains that the instruction informed the jurors that they must presume he was "not guilty," rather than "innocent." Second, he complains that it required the jurors to determine whether they had a reasonable doubt concerning the "claims made by the State" rather than the "elements of the offense." *Nash*, 932 P.2d at 445–46.

■ Regarding the first challenge, in Nash's direct appeal the court held that use of the "not guilty" language was proper. *See Nash*, 932 P.2d at 446 (adopting reasoning of *State v. Pierce*, 260 Kan. 859, 927 P.2d 929, 935–36 (Kan.1996)). Even

were we to disagree with the Kansas court on this matter, Nash is not entitled to relief because the error was harmless. In *McCracken v. Gibson*, 268 F.3d 970 (10th Cir.2001), *petition for cert. filed* (U.S. May 17, 2002) (No. 01–10302), we addressed a similar contention by a habeas petitioner concerning the use of the phrase "presumed not guilty" in a jury instruction given in Oklahoma state court. We held that the error, if any, was not a structural error and was therefore subject to harmless error analysis. *Id.* at 976–77. There, as here, the key question of fact to be resolved by the jury was the extent of the defendant's involvement in the crimes. *Id.* at 977. The semantic difference between "presumed innocent" and "presumed not guilty" was not the determining factor in the jury's decision of guilt, and the error was therefore harmless. *Id.* The same is true in this case. In view of the evidence presented detailing Nash's involvement in the crimes, the semantic difference between "presumed innocent" and "presumed not guilty" could not have had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

■ A similar analysis applies to the use of the phrase "claims made by the State." Nash contends that it allowed the jury to find him guilty based on factors other than the elements of the offense. The Kansas court on direct appeal found no error in the instruction. *See Nash*, 932 P.2d at 447 (following *Pierce*, 927 P.2d at 936–37). In any event, if there was error, it was harmless. In defining the elements of the offenses with which Nash was charged, the instructions used the words "claims" and "elements" interchangeably. Nash fails to show that it was even remotely likely that the jury was confused by the use of the phrase "claims made by

the State." If there was any error, it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 638.

## II. Issues raised initially in state habeas petition

### 1. Procedurally barred claims

The district court, noting that the Kansas Court of Appeals refused to consider six of the nine issues Nash had raised on state habeas due to Nash's failure to raise them on direct appeal, concluded that these claims were procedurally barred from federal habeas review. When a petitioner seeks a COA to review the district court's application of procedural bar, "a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Federal habeas review of claims defaulted in state court in accordance with an independent and adequate state procedural rule is barred "unless the petitioner can demonstrate cause for his default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). "An independent state procedural ground is 'adequate' if it has been strictly or regularly followed and applied evenhandedly to all similar claims." *Rogers v. Gibson*, 173 F.3d 1278, 1290 (10th Cir. 1999) (internal quotation marks and citation omitted).

Under Kansas law, "where an appeal is taken from the sentence imposed and/or a conviction, the judgment of the reviewing

court is res judicata as to all issues actually raised, and those issues that could have been presented, but were not presented, are deemed waived. Where a defendant's claim has not been raised at trial or on direct appeal, such a default prevents the defendant from raising the claim in a second appeal or a collateral proceeding." *State v. Johnson,* 269 Kan. 594, 7 P.3d 294, 299 (Kan.2000). A limited exception is made for trial errors affecting constitutional rights, which may be raised for the first time on state habeas upon a showing of exceptional circumstances excusing the failure to raise the issue on direct appeal. *See* Kan. Ct. R. 183(c)(3); *see also Johnson v. State,* 271 Kan. 534, 24 P.3d 92, 93 (Kan.2001). Nash fails to show that this rule is not strictly or regularly followed or that it is not applied evenhandedly to claims similar to those he raises. Nor did he argue that specific exceptional circumstances existed that would excuse the default of his constitutional claims. Accordingly, we hold that the state court resolved the issue upon an independent and adequate state procedural ground.

### a. Cause and prejudice

We must next consider whether Nash has shown cause and prejudice that would excuse his procedural default, or whether a miscarriage of justice would occur if his defaulted claims were not considered. *Coleman,* 501 U.S. at 750. Nash argues that his default should be excused because his appellate attorney was ineffective in failing to raise the defaulted issues on direct appeal. In addressing this argument, we must inquire "whether appellate counsel was objectively unreasonable in failing to raise these ... claims on direct appeal and, if so, whether there is a reasonable probability that, but for his counsel's unreasonable failure to raise these claims, [Nash] would have prevailed on his appeal." *Neill v. Gibson,* 278 F.3d 1044,

1057 (10th Cir.2001) (internal quotation marks and citation omitted), *petition for cert. filed* (U.S. May 6, 2002) (No. 01–10121).

In his direct appeal, Aikins raised four of the six defaulted issues that Nash raised in his state habeas petition. Nash states these issues as follows:

VI. THE TRIAL COURT'S UNQUALIFIED EXPLICATION DURING JURY ORIENTATION REGARDING THE LEVEL OF PROOF REQUIRED IN A CRIMINAL PROSECUTION UNDERMINED THE FAIRNESS OF THE PETITIONER'S TRIAL;

...

VIII. THE TRIAL COURT ERRED IN DENYING THE PETITIONER'S MOTION FOR MISTRIAL BASED UPON THE STATE'S NON-DISCLOSURE THAT WITNESS, DAMON McGLORY, WAS PROMISED THAT NOTHING HE SAID COULD BE USED AGAINST HIM IN A FUTURE PROSECUTION.

IX. THE TRIAL COURT ERRED IN DENYING THE PETITIONER'S MOTION FOR MISTRIAL PREDICATED UPON THE STATE'S COMMENT UPON HIS REFUSAL TO CONFESS;

X. THE TRIAL COURT ERRED IN PROMULGATING JURY INSTRUCTION TWELVE, INDICATING THAT IN ORDER TO FIND THE PETITIONER GUILTY THE JURY MUST FIND THAT "HE KILLED GENE MARTIN"[.]

Aplt. Br. at *iii.* The Kansas Supreme Court rejected each of these issues as raised by Aikins. *See Aikins,* 932 P.2d at 427–28 (comment on level of proof); 433–37 (McGlory non-disclosure); 437–39 (comment on refusal to confess); 439–40 (jury instruction number twelve). Nash fails to

show that his appellate attorney would have achieved a different result by raising these issues in Nash's direct appeal.

We turn to the remaining two procedurally barred issues to determine whether Nash has shown cause and prejudice as to them. Nash first argues that he was convicted on the basis of insufficient evidence. But a review of the trial transcript establishes that there was sufficient evidence at trial to support Nash's convictions under the standard in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). He was not prejudiced by his attorney's failure to raise this issue on direct appeal.[1]

Nash next argues that cumulative error deprived him of his Sixth Amendment right to a fair trial. Kansas courts will not reverse a conviction for cumulative error unless "the totality of circumstances substantially prejudiced the defendant and denied the defendant a fair trial." *State v. Boorigie*, 41 P.3d 764, 780 (Kan.2002). Aikins raised nearly all of Nash's arguments on direct appeal, including a claim of cumulative error. The Kansas Supreme Court stated, "We do not find reversible error on any point raised by the defendant, either singularly or cumulatively." *Aikins*, 932 P.2d at 441. Nash fails to show that had his attorney raised cumulative error, there was a reasonable probability that he would have succeeded on appeal where Aikins failed.

b. **Fundamental miscarriage of justice**

Nash would also be entitled to have his procedural default excused if he could show that failure to consider his claims would result in a fundamental miscarriage of justice. This standard requires Nash to make a colorable showing that he is factually innocent of his crimes. *Beavers v. Saffle*, 216 F.3d 918, 923 (10th Cir.2000). As mentioned, a review of the trial record convinces us that Nash has failed to demonstrate his factual innocence of the crimes for which he was convicted.

2. **Non-defaulted claims**

We next consider the three state habeas claims that were not procedurally defaulted in state court. Nash argues that the trial court should have given an instruction on aiding a felon as an affirmative defense to the greater crimes charged. He also argues that his trial and appellate counsel were ineffective in failing to raise this issue, either at trial or on direct appeal.

The Kansas Court of Appeals considered these claims on the merits in Nash's appeal from the denial of his state habeas petition. The court held that "aiding a felon" is not an affirmative defense under Kansas law. It concluded that failure to request such an instruction was therefore not ineffective assistance of trial counsel and that failure to raise this issue on direct appeal did not constitute ineffective assistance of appellate counsel. Nash has failed to show that these determinations by the Kansas Court of Appeals were contrary to or involved an unreasonable application of clearly established federal law or an unreasonable determination of the facts.

III. **Conclusion**

Nash has failed to demonstrate his entitlement to a COA under the applicable

---

1. Aikins raised the issue of sufficiency of the evidence on direct appeal, and the Kansas Supreme Court determined that sufficient evidence supported his conviction. *See Aikins*, 932 P.2d at 440–41. But we do not view this determination as dispositive of Nash's challenge because the evidence showed that the two men played different roles in the underlying offenses.

standards. We therefore DENY COA and DISMISS his appeal.