MODIFIED

NOT DESIGNATED FOR PUBLICATION

No. 115,064

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANONA TAYLER MYERS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; SARA WELCH, judge. Original opinion filed May 19, 2017; modified opinion filed June 5, 2017. Affirmed in part, reversed in part, and remanded with directions.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., PIERRON and BRUNS, JJ.

*Per Curiam*: On August 29, 2013, the State charged Anona Tayler Myers with possession of heroin, a severity level 5 drug felony, possession of marijuana, a class A nonperson misdemeanor, and possession of drug paraphernalia, a class A nonperson misdemeanor. Myers filed a motion to suppress the evidence arguing law enforcement had unreasonably detained her and failed to give her *Miranda* warnings, the search of the car was unreasonable, and the dog sniff for narcotics was unreliable. After an evidentiary hearing, the district court denied the motion to suppress. After a bench trial on stipulated

facts, the court convicted Myers of all three offenses. She was sentenced to 18 months' probation with an underlying sentence of 12 months in prison. Myers appeals.

The important facts are as follows. At around 1:15 a.m. on July 2, 2013, Corporal Ryan Sumner and Corporal Jim Harris of the Lenexa Police Department responded to a complaint that four individuals were trespassing inside a subdivision's community pool after hours. Harris was a K9 handler, and Speedy was his partner dog. Speedy was with Harris when he arrived at the swimming pool and stayed secured in Harris' car.

Sumner was the supervisor of the K9 unit. He also had some specialized training in narcotics detection, but he was not an expert in drug recognition. He had attended several narcotics seminars through the International Narcotics Officers Association and the Kansas Narcotics Officers Association. He was also a narcotics instructor at the Johnson County Police Academy. At some point, Officer Kern also arrived at the scene.

An 8-foot wrought iron fence enclosed the pool area. The officers requested that the group exit the pool area. The gate was locked, so Sumner helped them climb back over the fence to get out.

Sumner spoke with the four individuals who included Myers, John Downey, and Taylor Gomez. Sumner testified he was originally investigating them for trespassing and he had no intent of arresting them. Sumner explained people frequently trespassed at that pool.

While speaking with Myers and Downey, Sumner noticed they both had "really pinpoint pupils." He noted they were drowsy, which he explained was indicative of opiate use. He did not detect the odor of alcohol. Based on these observations, he believed they were under the influence of something other than alcohol, though he admitted at the suppression hearing that a person could be drowsy for reasons other than opiate use,

including time of day and legal prescription drug use. Because of his suspicions of drug use, Sumner climbed over the fence and searched the pool area for discarded drugs.

After searching the pool area, Sumner returned to question the four individuals. He spoke with them both as a group and individually. He believed he spent a few minutes speaking with each person. Sumner's body camera recorded these interactions. Officer Kern kept watch over the individuals Sumner was not questioning.

At 1:44 a.m., Sumner began questioning Downey who stated he used prescription Xanax as well as prescription methadone because he was a recovering heroin addict. When asked, he denied there was anything illegal in his car. He did not give Sumner permission to search his car.

At 1:48 a.m., Sumner began questioning Myers. He told Myers that he knew she was on something, but she denied it. She told the officer she was only taking prescription Paxil. Sumner told her that Downey had been completely honest with him, and Sumner was going to search Downey's car. He asked Myers if she knew of anything illegal in the car. Myers said she did not. He asked Myers if a drug recognition expert came to test her, what she would test positive for. Myers said she would not test positive for anything other than Paxil.

Sumner also asked Myers if she had any addictions. She said a doctor prescribed her Suboxone to treat a heroin addiction. Sumner asked to see Myers' arms and asked her when was the last time she had used heroin. She said the last time she had used heroin was 2 weeks before. He then asked if a female officer came and searched Myers' person, would the officer find anything. Myers said she would not.

At some point, Sumner asked Harris to conduct a canine sniff around Downey's car. The record is not clear as to when the sniff took place. According to Harris, the sniff

3

took about a minute to complete. Speedy alerted to the odor of narcotics near the trunk but was unable to locate the source. Harris explained Speedy was sometimes unable to determine the location of narcotics in vehicles.

Harris reported to Sumner that Speedy had positively alerted. Sumner then searched the vehicle. The search took place from 1:53 am to 2:05 am. He found torn plastic bags, Q-tips, and an orange syringe cap in the front of the car. In the trunk, he found a black purse with a green case inside. Inside the green case, Sumner found marijuana and a marijuana pipe.

After completing his search of the car, Sumner asked to whom the black purse belonged. At this point, Sumner had not given any *Miranda* warnings. Myers said the purse belonged to her. Sumner asked Myers if the marijuana was hers and Myers said it was. Sumner also asked if the green case inside the purse belonged to Myers, and she said it did. She also said there was Suboxone in the purse which she had gotten from her doctor.

Sumner questioned Gomez at 2:09 a.m. Gomez told Sumner that the last time she had shot up was 2 weeks before. She denied she was on something, and she denied she had drugs on her. Sumner asked to search Gomez' car, which was parked several blocks away in the driveway of her father's house. She did not consent to the search. Later, she agreed to give Sumner a case of used needles she still had in her car.

At 2:23 a.m., Sumner returned to Downey's car to get Downey's and Myers' cell phones so they could call for rides. While looking for the phones, Sumner also searched Myers' green case again. This time, he found heroin, a syringe, and a spoon that he had not discovered in his initial search.

4

Sumner took Myers aside and advised her of her *Miranda* rights. He questioned Myers about the heroin, and she eventually admitted it was hers. Sumner placed Myers in custody and took her to the station for processing.

On August 29, 2013, the State charged Myers' with possession of heroin, a severity level 5 drug felony, possession of marijuana, a class A nonperson misdemeanor, and possession of drug paraphernalia, a class A nonperson misdemeanor. Myers filed a motion to suppress evidence obtained in violation of the Fourth Amendment to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights. She argued Sumner had unreasonably detained her, he failed to give her *Miranda* warnings, the search of Downey's car was unreasonable, and the dog sniff was unreliable.

The district court held an evidentiary hearing on Myers' motion on April 6, 2015. After the presentation of evidence, the court found law enforcement had a reasonable suspicion to detain Myers until Speedy alerted to narcotics in Downey's car. At that point, law enforcement had probable cause to search the car. The court also held that the officers kept Myers for an investigatory detention and she was not in custody before Sumner advised her of her *Miranda* rights. Based on these findings, the court denied Myers' motion to suppress.

On May 25, 2015, Myers' filed a motion to reconsider her motion to suppress. She argued the district court should reconsider its ruling in light of *Rodriquez v. United States*, 575 U.S. __, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015), a United States Supreme Court case decided that year. After hearing arguments, the district court affirmed its original ruling.

The case was scheduled to go to trial on stipulated facts on the same day the district court heard arguments on Myers' motion to suppress. At the beginning of the hearing, the following colloquy took place:

"THE COURT: . . . You have the right to have this case tried to a jury of 12 people, and have 12 people decide whether or not you're guilty of the charges filed in the complaint, specifically possession of heroin, possession of marijuana and misdemeanor possession of drug paraphernalia. Your attorney is telling me you wish to waive your right to a jury trial, and have it tried to the Court; or in other words, a judge would determine whether or not you're guilty of those three offenses. Is that your desire?"

"[MYERS]: Yes."

The next day, May 28, 2105, Myers signed a document waiving her right to a jury trial. The document stated: "[Myers] understands that she has the right of trial by jury as declared by Section 5 to the Kansas Constitution Bill of Rights. Understanding that right, [Myers] knowingly and voluntarily waives her right to trial by jury."

On July 1, 2015, the case went to a bench trial on stipulated facts. The court confirmed Myers had filed a document waiving her right to a jury trial. Based on the stipulated facts, the court convicted Myers of all three offenses. On September 9, 2015, the court sentenced Myers to 18 months' probation with an underlying sentence of 12 months in prison.

On appeal Myers first argues the district court erred by not suppressing her statements regarding ownership of the purse, marijuana, and pipe. She contends she was in custody at the time her statements were made and Sumner's questions were likely to elicit an incriminating response. Since Sumner did not give her *Miranda* warnings prior to those statements, she claims they are inadmissible. The State argues Sumner's questioning only constituted an investigatory interrogation; therefore, he did not need to give Myers a *Miranda* warning.

We agree with Myers' argument on this issue.

6

We review a district court's decision on a motion to suppress under a bifurcated standard. We review the district court's factual findings to determine whether they are supported by substantial competent evidence. The ultimate legal conclusion is reviewed using a de novo standard. In reviewing the factual findings, we do not reweigh the evidence or assess the credibility of witnesses. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016) (reviewing scope of search warrant); *State v. Neighbors*, 299 Kan. 234, 240, 328 P.3d 1081 (2014) (determining if emergency aid exception applied to search of apartment); *State v. Gibson*, 299 Kan. 207, 215-16, 322 P.3d 389 (2014) (motion to suppress inculpatory statements).

Generally, when the district court has denied a motion to suppress, the moving party must have objected to the introduction of that evidence at the time it was offered at trial to preserve the issue for appeal. *State v. Richard*, 300 Kan. 715, 726, 333 P.3d 179 (2014). The district court convicted Myers after a bench trial on stipulated facts. Myers appears to have essentially entered a contemporaneous objection. In the stipulation of facts, Myers stated the stipulations were not meant as a waiver of her argument in support of her motion to suppress. Additionally, at trial, Myer's raised the issue of the motion to suppress in order to preserve her right to appeal. The court recognized Myers had preserved the issue for appeal. Furthermore, in a bench trial consisting solely of stipulated facts, the lack of contemporaneous objection does not prevent review of the suppression issue. *State v. Kelly*, 295 Kan. 587, 594, 285 P.3d 1026 (2012) (different judges presiding over hearings); *State v. Bogguess*, 293 Kan. 743, 746-47, 268 P.3d 481 (2012) (same judge presided over suppression hearing and bench trial). Thus, this issue is properly before us.

*Custodial or Investigatory Interrogation*

In *State v. Lewis*, 299 Kan. 828, 834, 326 P.3d 387 (2014), our Supreme Court defined a custodial interrogation as "questioning initiated by law enforcement officers

7

after a person has been taken into custody or otherwise deprived of his or her freedom in any significant way." Our courts distinguish between custodial interrogation and investigatory interrogation, "which occurs as a routine part of the fact-finding process before the investigation reaches the accusatory stage." 299 Kan. at 835.

Sumner's interviews were custodial as the trespassers had been taken into custody for trespassing before the questioning occurred. Although Officer Sumner testified that he had no intention of arresting these four individuals merely for trespassing, whether a person is in custody for *Miranda* purposes is decided under an objective standard, not based on the officer's subjective intent. See *State v. Summers*, 293 Kan. 819, 826, 272 P.3d 1 (2012). Myers and the others were caught by police trespassing, a misdemeanor offense, see K.S.A. 2016 Supp. 21-5808, and they were then kept in police custody for a substantial time period.

There are many issues concerning the investigation which could lead to many minutes of analysis. However, at this time, the admissibility of the pre-*Miranda* statements is the key issue. Sumner was holding the trespassers and they were in custody. This was because of their trespassing. When the officer noticed the pin-point pupils of the suspects there was yet another reason, along with many others, to hold them in custody which was done.

Had Sumner administered *Miranda* warnings as soon as he noted the pin-point pupils, the subsequent questioning and discovery of evidence would probably have been lawful. However, without the *Miranda* warnings all of the incriminating statements up to the time the warnings were given are inadmissible as is any other evidence garnered through that questioning. See *State v. Schultz*, 289 Kan. 334, 342-43, 212 P.3d 150 (2009).

8

Since the district court did not find a *Miranda* violation, it did not assess whether any of the physical evidence would have been discovered notwithstanding the information obtained through the improper pre-*Miranda* interrogation. We leave it to the district court to sort that issue out. We hold that the statements Myers made before she was given the *Miranda* warnings, as well as any information discovered as a result of those statements, are inadmissible. Because significant, inadmissible evidence was admitted at trial, we reverse Myer's convictions and remand the case to the district court for further proceedings consistent with this opinion.

*Waiver of Right to Jury Trial*

Myers also argues she did not knowingly and voluntarily waive her right to a jury trial. She contends the district court failed to inform her of the constitutional nature of the right and the possibility that she could have gone to trial on nonstipulated facts. She also asserts her waiver was not voluntary because she was battling a drug addiction at the time and was pregnant.

The State argues the district court's advisement in this case was sufficient. It contends the district court need only inform a defendant of his or her right to a jury trial and it does not need to tell the defendant about different trial options. According to the State, the record establishes that Myers' waiver was knowing and voluntary.

Myers did not raise the issue of the improper waiver of her right to a jury trial before the district court and raises it for the first time on appeal. Generally, issues not raised before the trial court cannot be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). There are several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, including the following: (1) The newly asserted theory involves only a question of law arising on proved or admitted

9

facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014).

Myers argues the consideration of this issue is necessary to preserve her right to a jury trial. Kansas courts have also held that a waiver of a jury trial may be addressed for first time on appeal. *State v. Beaman*, 295 Kan. 853, 856-58, 286 P.3d 876 (2012); *State v. Mullen*, 51 Kan. App. 2d 514, 524, 348 P.3d 619 (2015) ("The effectiveness of a waiver may be addressed for the first time on appeal to prevent the denial of a fundamental right."), *aff'd* 304 Kan. 347, 371 P.3d 905 (2016). The State notes that Myers did not raise the issue below, but does not argue we should not consider this issue. Thus, we will consider this issue for the first time on appeal.

*Standard of Review*

Whether a defendant waived the right to a jury trial is a question of fact, and it is subject to analysis under a substantial competent evidence standard of review. When the facts of the district court's determination to accept a jury trial waiver are undisputed, however, the question of whether the defendant voluntarily and knowingly waived the jury trial right is a question of law subject to unlimited review. *Beaman*, 295 Kan. at 858.

A criminal defendant may waive his or her right to a jury trial if the district court and State agree to the waiver. K.S.A. 22-3403; 295 Kan. at 858. Kansas courts strictly construe these waivers in favor of the defendant. 295 Kan. at 858. When determining the validity of a waiver, we consider whether the defendant made the waiver knowingly and voluntarily. 295 Kan. at 858.

In order for a defendant to effectively waive his or her right to a jury trial, the court must first advise the defendant of the right to a jury trial, and the defendant must personally waive that right in writing or in open court for the record. *State v. Irving*, 216 Kan. 588, 590, 533 P.2d 1225 (1975). A court does not need to inform a defendant of collateral rights associated with the right to a jury trial, including the right to a unanimous verdict or the requisite number of jurors. See, *e.g.*, *State v. Lewis*, 301 Kan. 349, 377, 344 P.3d 328 (2015) (holding district court did not have to inform defendant of attorney's ability to make *Batson* challenges); *Beaman*, 295 Kan. at 862 (holding district court did not need to inform defendant that 12 jurors would have to unanimously convict him); *State v. Clemons*, 273 Kan. 328, 340-41, 45 P.3d 384 (2002) (holding district court did not need to inform defendant of unanimous verdict requirement).

Kansas courts have previously upheld waivers when the record indicated the defendant was advised of his or her right to have charges against him or her tried to 12 jurors, and if he or she waived the right, a judge would try the case. In *Johnson v. State*, 271 Kan. 534, 535, 24 P.3d 92 (2001), the defense counsel questioned the defendant on the record to verify that the defendant understood the waiver. Defense counsel asked him in part:

> "[DEFENSE COUNSEL]: Now, you understand that you have a right to go before 12 people to have your case tried?
> "[DEFENDANT]: Yes, I do.
> . . . .
> "Q: Now, it is my understanding that you are willing to give up your right to a jury trial; is that right?
> "A: That's right.
> "Q: That means that you would not be tried by 12 people but would be tried by one person. . . . And that one person would be Judge Dowd; do you understand?
> "A: I understand that." 271 Kan. at 535-36.

11

The *Johnson* court upheld the defendant's waiver, finding he was informed of the rights he was waiving by having a bench trial. 271 Kan. at 537.

In *State v. Stuber*, 27 Kan. App. 2d 160, 1 P.3d 333 (2000), the district court asked the defendant:

> "[DISTRICT COURT]: Your attorney indicates that you're willing to waive your right to a jury trial in this case. What that means is that if this case goes to trial, it will be tried before a judge and you will be giving up your right to have this case tried before a jury of 12 persons; is that what you wish to do?
> "[DEFENDANT]: Yes, I understand that, Your Honor, and that's, I guess, what I wish to do, yes." 27 Kan. App. 2d at 164.

The *Stuber* court found substantial competent evidence showed the defendant's waiver was voluntary, because the district court told him he was waving his rights by having a bench trial, and the defendant indicated on the record he wished to waive those rights. 27 Kan. App. 2d at 165. Myers' waiver is substantially similar to the waiver in *Stuber*. The district court told Myers she had a right to jury trial, including a jury of 12 people, and that if she waived that right, a judge would determine her guilt. Myers indicated her desire to wave that right in open court. Additionally, Myers signed a written waiver stating she understood she had a right to a jury trial, and she was knowingly and voluntarily waiving that right.

Myers first argues her waiver was not fully effective because her written waiver only acknowledged § 15 of the Kansas Constitution Bill of Rights as the source of the right. The document did not include a reference to the right to a jury trial under the federal constitution. Myers contends this implies she did not waive her federal right to a jury trial. Because we must strictly construe waivers in favor of the defendant, Myers never waived her right to a jury trial under the Sixth Amendment to the United States Constitution. What Myers fails to acknowledge is that she signed the written waiver after

12

she had already orally waived her rights in court. Myers does not provide any authority that a written waiver can act retroactively to undo a previous waiver made before the court.

Additionally, Myers argues her waiver was not knowing because the district court did not inform her of the constitutional nature of her right or that she could proceed to a jury trial on nonstipulated facts. Myers does not cite to any authority that requires district courts to inform defendants of the source of the jury trial right, and Kansas courts have regularly upheld waivers when the district court did not even identify the right to a jury trial as constitutional. See *Beaman*, 295 Kan. at 862, *Clemons*, 273 Kan. at 340-41, *Johnson*, 271 Kan. at 535; *Stuber,* 27 Kan. App. 2d at 164-65. Similarly, Myers does not cite to any authority that the district court needed to inform her of the possibility of trying her case to a jury on nonstipulated facts. To the contrary, as our Supreme Court has noted: "[Kansas] caselaw has upheld jury trial waivers even when the district court fails to explain the particulars surrounding the right to a jury trial." *State v. Rizo*, 304 Kan. 974, 981, 377 P.3d 419 (2016); see also *State v. Savage*, No. 112,882, 2015 WL 8590269, at *7 (Kan. App. 2015) (unpublished opinion) ("Clear and prolonged discussion of all alternative procedures is not necessary for a jury waiver to be valid.").

Myers cites *State v. Cervantes-Cano*, No. 107,179, 2013 WL 1943060 (Kan. App. 2013) (unpublished opinion), for the rule that the district court must inform a defendant of the constitutional right to a jury trial, the nature and extent of that right, and secure a voluntary waiver. In *Cervantes-Cano*, the district court asked the defendant, through an interpreter, whether he wanted to forego a jury trial in favor of trying the case to the court. The *Cervantes-Cano* court determined the facts did not support a finding that the defendant knowingly and voluntarily waived his jury trial right. 2013 WL 1943060, at *4. Specifically, the court noted that the district court never advised the defendant he had a right to a jury trial and did not explain to the defendant, in terms the defendant could understand, what "jury trial" and "trial to the Court" meant. 2013 WL 1943060, at *4.

13

Applying *Cervantes-Cano* to the present case, Myers' waiver is still valid. The district court told Myers she had a right to a jury trial and explained the nature and extent of this right. It told Myers a jury trial entailed 12 jurors determining guilt, and a trial to the court entailed the judge determining guilt. While Myers' wording of the holding in *Cervantes-Cano* suggests the court needed to tell Myers her right was constitutional, the *Cervantes-Cano* court made no such finding.

Myers also argues that the record "casts doubt" on whether her waiver was voluntary. She points out she was dealing with a drug addiction during the pendency of the case. She also was pregnant and at one point attempted to plead guilty to get out of jail sooner. Myers suggests the district court's statement that it anticipated she would sign a stipulation of facts for a bench trial may have influenced her decision-making.

Myers does not provide any legal standard for determining if a waiver is involuntary. Kansas cases suggest, though, that this requirement prohibits waivers obtained through threats, promises, or some other type of external coercion. For example, in *State v. Schreiner*, No. 99,805, 2009 WL 1911685, at *5, the court found a defendant's waiver was not voluntary when it was conditioned on pleas that were never entered. In *Stuber*, the defendant claimed his waiver was not voluntary because the trial court allegedly threatened to deny him an appeal bond if a jury convicted him, though there was no evidence to support his allegation in the record. 27 Kan. App. 2d at 164.

There is nothing to suggest that exigent life circumstances was the type of pressure Kansas courts intended to protect defendants against when they made the requirement that waivers of the right to a jury trial must be voluntary. Additionally, Myers' allegation regarding the district court's statement is entirely speculative. Based on the record, Myers knowingly and voluntarily waived her right to a jury trial.

Affirmed in part, reversed in part, remanded with instructions.