No. 110,468

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JORDAN MULLEN,
*Appellant.*

SYLLABUS BY THE COURT

1.

The Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights assure each person's right to be secure in his or her person and property against unreasonable searches and seizures.

2.

When a search warrant affidavit is challenged, the reviewing court applies a deferential standard of review.

3.

The anticipated controlled delivery of a package likely containing illegal contents is sufficient to establish probable cause to issue a search warrant.

4.

A controlled delivery is the delivery of a package containing suspected illegal contents under the control and supervision of law enforcement officers whether accomplished in a hand-to-hand delivery or through a drop-off delivery.

5.

Anticipatory search warrants are issued based on probable cause in anticipation at some future time certain evidence of a crime will be located at a specific place.

6.

The triggering event for a controlled delivery anticipatory search warrant's execution is someone taking possession and control over the package at the specified place under the supervision of law enforcement officers.

7.

A waiver by the defendant of his or her constitutional right to a jury trial must be done on the record or in writing personally by the defendant after the district court has explained on the record to the defendant what constitutional rights he or she is relinquishing by waiving his or her right to a jury trial.

8.

Failure by the district court to explain to the defendant on the record the right to a jury trial and then obtain the defendant's verbal or written waiver is error that requires reversal of the bench trial conviction.

Appeal from Johnson District Court; JANICE D. RUSSELL and JOHN P. BENNETT, judges. Opinion filed May 1, 2015. Affirmed in part, reversed in part, and remanded with directions.

*Joanna Labastida*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, senior deputy district attorney, *Paul E. Brothers*, legal intern, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., MCANANY and SCHROEDER, JJ.


SCHROEDER, J.: Jordan Mullen appeals his conviction for possession with intent to distribute marijuana. Mullen claims the district court erred in that it lacked probable cause to issue the anticipatory search warrant and the trigger event allowing the anticipatory search warrant to be executed never occurred. We disagree. We affirm the denial of Mullen's motion to suppress. The record is silent involving the district court's explanation to Mullen of his right to a jury trial and his waiver of that right. Thus, we reverse Mullen's conviction for possession with intent to distribute marijuana and remand with directions.


FACTS


On November 8, 2011, Justin Lewis, a United States Postal Inspector in Kansas City, Missouri, noticed a suspicious package. Lewis contacted the Shawnee Police Department. He informed the police he had a suspected drug package addressed to a house on Meadowsweet Lane, Shawnee, Kansas, for delivery that a police K-9 unit had hit on. Based on Lewis' information, Detective Steve Hahne of the Shawnee Police Department requested and obtained an anticipatory search warrant for the house on Meadowsweet Lane from a magistrate judge. The anticipatory search warrant required a controlled delivery of the suspected drug package to the house before it granted authority to enter the house.


Upon receipt of the anticipatory search warrant, Shawnee police officers began surveillance of the house on Meadowsweet Lane. Officers observed Lewis, dressed in a postal carrier uniform, drive a postal vehicle to the house at 1:03 p.m. Lewis exited his vehicle, knocked on the door, and yelled, "Post Office." When no one answered the door, he left the suspected drug package on the porch by the front door of the house, returned to the postal vehicle, and left. At 1:06 p.m., an unknown individual opened the front door,

picked up the package, and took the package inside the house. Officers then executed the search warrant at 1:17 p.m. by entering the house.

Officers encountered the unknown male, later identified as Mullen, alone in the house. The house did not belong to Mullen, but Mullen was living at the house. Officers did not see anyone enter or leave the house between the time the package was left on the porch and when the search warrant was executed. The unopened package was found on the kitchen counter.

After giving Mullen his *Miranda* warnings, Hahne asked Mullen what was in the package. Mullen initially claimed he did not know what was in the package; however, upon additional questioning, Mullen admitted he knew it contained marijuana. Mullen eventually admitted he had agreed to retrieve the package from the front porch for a friend. Mullen revealed to Hahne that his friend told him a package would be delivered to the house between 11 a.m. and 2 p.m., and Mullen needed to be at the house to retrieve the package from the front steps. Additionally, Mullen was instructed to not open the package and that someone would stop by to pick it up. Officers opened the package and found about 2 pounds of marijuana inside.

Mullen was charged with one count of possession with intent to distribute marijuana. Prior to trial, Mullen filed a motion to suppress arguing the triggering event for the anticipatory warrant—a controlled delivery of the package to the house—did not occur, and therefore, the anticipatory search warrant was not validly executed. Mullen argued a controlled delivery required a hand-to-hand delivery between Lewis and Mullen, and not Lewis leaving the package on the steps for someone to retrieve it later. The State argued a controlled delivery did occur and all that was needed was for the suspected package of drugs to enter the house under law enforcement supervision. The evidence at the preliminary hearing reflected the package was mailed with a waiver of signature so it could be left at the delivery address.

The district court denied Mullen's motion to suppress. The district court reasoned the magistrate judge intended for the warrant to become valid once the package was brought inside the house, regardless of whether there was a hand-to-hand delivery. Therefore, because Mullen took the package into the house, the anticipatory search warrant was properly executed.

Mullen agreed to a bench trial on stipulated facts and was found guilty of possession of marijuana with intent to distribute. The written stipulation contained Mullen's waiver of his right to a jury trial. At the bench trial, defense counsel discussed Mullen's waiver with the district court. The record is silent about the district court explaining to Mullen his right to a jury trial or obtaining his verbal waiver of his right to a jury trial.

Mullen now appeals all adverse rulings involving his motion to suppress and the district court's failure to explain his right to a jury trial or obtain his personal waiver of his right to a jury trial before proceeding with the bench trial.

ANALYSIS

Mullen raises three issues for us to resolve. First, we will consider how the anticipatory search warrant was obtained. Next, we will discuss the anticipatory search warrant and its execution. Finally, we will address the district court's failure to explain to Mullen his right to a jury trial and obtain his verbal waiver of that right on the record before proceeding with the bench trial.

*Did the affidavit provide probable cause to issue the anticipatory search warrant?*

Mullen argues the affidavit submitted to obtain the anticipatory search warrant was insufficient to support probable cause to issue the search warrant "because receiving

a package that contains drugs without knowing it contains drugs is not evidence of a crime." In response, the State argues the search warrant affidavit provided probable cause to issue the search warrant, and "Mullen cites no cases that hold an anticipatory search warrant must be supported by evidence of knowledge of receipt of contraband."

In reviewing whether an affidavit in support of a search warrant supplies probable cause, a district judge must consider the totality of the circumstances presented and make "'a practical, common-sense decision whether a crime has been or is being committed and whether there is a fair probability that contraband or evidence of a crime will be found in a particular place.' [Citation omitted.]" *State v. Powell*, 299 Kan. 690, 695, 325 P.3d 1162 (2014).

When a search warrant affidavit is challenged, the reviewing court applies a deferential standard. The standard is whether

> "'the affidavit provided a substantial basis for the magistrate's determination that there is a fair probability that evidence will be found in the place to be searched. Because the reviewing court is able to evaluate the necessarily undisputed content of an affidavit as well as the issuing magistrate, the reviewing court may perform its own evaluation of the affidavit's sufficiency under this deferential standard.' [Citation omitted.]" *State v. Hensley*, 298 Kan. 422, 428, 313 P.3d 814 (2013).

Here, the affidavit reflected:

- The package had been flagged as suspicious by a postal inspector at the Kansas City, Missouri, processing and distribution center;
- The package had been mailed from a known narcotics source;
- The package was addressed to a name that was unreadable at a house on Meadowsweet Lane, Shawnee; and

- A Kansas City, Missouri, Police Department K-9 unit alerted that the package contained narcotics.

Mullen argues:

"[D]elivery of a suspicious package alone does not satisfy probable cause. . . . Without evidence showing some element of knowledge on behalf of the person accepting a package delivered to one's house prior to the warrant being issued, simply having the misfortune of being connected to an address to which a suspicious package is delivered, is not probable cause to support a search warrant."

In *United States v. Grubbs*, 547 U.S. 90, 97, 126 S. Ct. 1494, 1498, 164 L. Ed. 2d 195 (2006), the United States Supreme Court, when discussing a controlled delivery of an illegal videotape, held:

"In this case, the occurrence of the triggering condition—successful delivery of the videotape to Grubbs' residence—would plainly establish probable cause for the search. In addition, the affidavit established probable cause to believe the triggering condition would be satisfied. Although it is possible that Grubbs could have refused delivery of the videotape he had ordered, that was unlikely. The Magistrate therefore 'had a "substantial basis for . . . conclud[ing]" that probable cause existed.' [Citations omitted.]"

The Tenth Circuit addressed this issue in *United States v. Hugoboom*, 112 F.3d 1081, 1086 (10th Cir. 1997). In *Hugoboom*, the defense counsel argued "there was not probable cause to support the anticipatory search warrant because the affidavit for the warrant only related to the proposed controlled delivery and that there was no 'independent evidence' of drug activities being carried on at [the address]." The Tenth Circuit disagreed and found a controlled delivery of a package likely containing drugs was sufficient to establish probable cause. 112 F.3d at 1086-87; see *United States v. Rowland*, 145 F.3d 1194, 1204 (10th Cir. 1998) (controlled delivery to a designated place

7

in the search warrant creates the nexus requirement to support probable cause); *United States v. Leidner,* 99 F.3d 1423, 1426-27 (7th Cir. 1996).

The affidavit reflects the package being delivered was flagged as being suspicious and a police drug K-9 unit had alerted to the possibility of narcotics. The affidavit provided probable cause to believe the triggering event would be satisfied. A crime was about to occur—taking possession of the package and moving it into the house—supporting the issuance of the search warrant. The district court did not err in finding the affidavit provided sufficient probable cause to issue the anticipatory search warrant.

*The anticipatory warrant was properly executed.*

Mullen argues on appeal the search of the house conducted by Shawnee police officers violated his Fourth Amendment constitutional rights because the warrant lacked probable cause. Mullen contends "[t]he triggering event in the warrant did not supply probable cause because receiving a package that contains drugs without knowing it contains drugs is not evidence of a crime." Mullen did not raise this issue in his motion to suppress at the district court level; however, it was raised and extensively discussed by the district court on its own initiative. The district court asked both parties to research the issue of whether unknowingly taking a package containing drugs into a house was sufficient grounds to grant officers probable cause for a search.

The State submitted a supplemental brief on the issue of whether the officers had probable cause to enter the house based on a suspected drug package entering the house. The district court held, "So I guess I am leaving it—insofar as the warrant allowed the police to go retrieve this package, talk to the person that had them—had the package, I think it was legal. . . . So the motion to suppress this evidence and those statements is denied."

While both parties state in their briefs Mullen did not raise this issue in his motion to suppress at the district court level, the issue was thoroughly discussed and ruled on by the district court. It is not being raised for the first time on appeal, and this court has jurisdiction to address the issue.

When reviewing a district court's decision on a motion to suppress, the appellate court applies a bifurcated standard. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. The ultimate legal conclusion is reviewed using a de novo standard. In reviewing the factual findings, the appellate court does not reweigh the evidence or assess the credibility of witnesses. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014). Substantial evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. May*, 293 Kan. 858, 862, 269 P.3d 1260 (2012). When the material facts are not in dispute, the question of whether to suppress evidence is a question of law over which an appellate court has unlimited review. *State v. Stevenson,* 299 Kan. 53, 57, 321 P.3d 754 (2014). The State bears the burden of proof for a suppression motion. It must prove to the trial court the lawfulness of the search and seizure. *Reiss*, 299 Kan. at 296.

When the trial court has denied a motion to suppress, the moving party must object to the introduction of that evidence at the time it was offered at trial to preserve the issue for appeal. *State v. McCaslin*, 291 Kan. 697, 726, 245 P.3d 1030 (2011). However, in a bench trial consisting solely of stipulated facts, the lack of contemporaneous objection does not prevent review of the suppression issue. *State v. Bogguess*, 293 Kan. 743, 746-47, 268 P.3d 481 (2012). In this case, both parties agreed in the stipulation of facts that Mullen was preserving for appeal all issues raised in his motion to suppress.

The Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights assure each person's right to be secure in his or her person and

9

property against unreasonable searches and seizures.

Anticipatory warrants are not categorically unconstitutional under the United States Constitution's Fourth Amendment provision that "'no Warrants shall issue, but upon probable cause.'" *Grubbs*, 547 U.S. at 94-95; U.S. Const. Amend. IV.

> "An anticipatory warrant is 'a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place.' [Citation omitted.] Most anticipatory warrants subject their execution to some condition precedent other than the mere passage of time—a so-called 'triggering condition.' . . . If the government were to execute an anticipatory warrant before the triggering condition occurred, there would be no reason to believe the item described in the warrant could be found at the searched location; by definition, the triggering condition which establishes probable cause has not yet been satisfied when the warrant is issued." *Grubbs*, 547 U.S. at 94.

Mullen claims the search warrant was not validly executed because the triggering event—a successful controlled delivery to a resident—did not occur. At issue here is what is considered a successful controlled delivery. Mullen argues on appeal that while "Kansas courts have not constructed a firm definition of a 'controlled delivery,'" case law strongly indicates a controlled delivery occurs when a postal carrier, or police posing as postal carriers, deliver and make contact with the person taking delivery of the subject package." The State contends that while Kansas courts have not "explicitly defin[ed] what a controlled delivery is, Kansas courts have implicitly recognized a controlled delivery can be accomplished through a hand-to-hand delivery or through a drop-off delivery."

Here, both parties are correct as Kansas courts have not explicitly defined the term "controlled delivery." Caselaw reflects controlled deliveries presenting different delivery processes have been approved by Kansas courts and federal courts. The United States

Supreme Court defined its view of controlled deliveries in *Illinois v. Andreas*, 463 U.S. 765, 769-73, 103 S. Ct. 3319, 77 L. Ed. 2d 1003 (1983). While Mullen's issue on appeal differs from *Andreas*, the Supreme Court's discussion about controlled deliveries provides guidance.

> "The lawful discovery by common carriers or customs officers of contraband in transit presents law enforcement authorities with an opportunity to identify and prosecute the person or persons responsible for the movement of the contraband. To accomplish this, the police, rather than simply seizing the contraband and destroying it, make a so-called controlled delivery of the container to its consignee, allowing the container to continue its journey to the destination contemplated by the parties. The person dealing in the contraband can then be identified upon taking possession of and asserting dominion over the container." 463 U.S. at 769.

In *Andreas*, the Illinois Supreme Court had defined a controlled delivery as "requir[ing] that the police maintain 'dominion and control' over the container at all times." 463 U.S. at 768. However, the United States Supreme Court found:

> "[T]he rigors and contingencies inescapable in an investigation into illicit drug traffic often makes 'perfect' controlled deliveries and the 'absolute certainty' demanded by the Illinois court impossible to attain. Conducting such a surveillance undetected is likely to render it virtually impossible for police so perfectly to time their movements as to avoid detection and also be able to arrest the owner and reseize the container the instant he takes possession. Not infrequently, police may lose sight of the container they are trailing, as is the risk in the pursuit of a car or vessel." 463 U.S. at 772.

While this does not directly answer Mullen's argument that a controlled delivery requires hand-to-hand delivery, it does point to the fact that what makes the delivery a controlled delivery is that it was performed under the control and supervision of law enforcement officers. This interpretation is supported by numerous cases discussing a controlled delivery where hand-to-hand contact was not required. For example, in *State v.*

11

*Bierer*, 49 Kan. App. 2d 403, 405-06, 308 P.3d 10, *rev. denied* 298 Kan. ___(2013), a postal inspector contacted the police about a suspicious package he believed contained drugs. After a K-9 unit alerted to the package for narcotics, a controlled delivery of the package was arranged. The postal inspector knocked on the door of the house; however, when no one responded, he left the package at the front door. Later, Bierer arrived and took the package from the front door and placed it in his vehicle. The panel referred to this as a controlled delivery. *Bierer*, 49 Kan. App. 2d at 413; see *Rowland*, 145 F.3d at 1204 (delivery to a post office box was a controlled delivery); *United States v. Fadipe*, 43 F.3d 993, 994 (5th Cir. 1995) (delivery to the mail box at an apartment complex was a controlled delivery).

The dominant feature in the cases discussing controlled deliveries is that the delivery is supervised by police officers, meaning police exercise control over when and how the delivery occurs. Delivery of a controlled substance is defined in K.S.A. 2011 Supp. 65-4101(g) as "the actual, constructive or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." This appears to be what occurred in this case. Inspector Lewis, while under the watchful eye of the Shawnee police officers, approached the house to deliver the package. He knocked on the door and yelled, "Post Office." Lewis waited at the door for a minute, but, when no one answered the door, he left the package at the front door of the house as the package sender had authorized. While the package was still under surveillance by the Shawnee police officers, Mullen opened the front door, picked up the package, and took it inside the house. Thus, by taking the package inside the house, Mullen exercised dominion and control over the package. After Mullen took the package into the house, the officers executed the search warrant.

To support his argument a controlled delivery requires hand-to-hand delivery, Mullen directs us to two Kansas cases: *State v. Windes,* 13 Kan. App. 2d 577, 776 P.2d 477 (1989), and *State v. Duhon,* 33 Kan. App. 2d 859, 109 P.3d 1282 (2005). While both

cases describe a controlled delivery occurring when the package was directly handed to the defendant, the State correctly responds that "neither case addressed whether a hand-to-hand delivery was the *only* method through which a controlled delivery could be completed."

Here, the triggering condition in the anticipatory warrant—taking possession of the suspected drug package on the porch and moving it into the house while under the supervision of the Shawnee Police—was met and the district court correctly denied Mullen's motion to suppress.

*Must Mullen verbally waive his right to a jury trial before the district court?*

Next, we address the district court's failure to verbally explain to Mullen his right to a jury trial and to obtain his verbal waiver of his right to a jury trial on the record. Mullen failed to raise the improper waiver of his right to a jury trial before the district court and raises it for the first time on appeal. While Mullen acknowledges he failed to raise this issue at the district court level, he argues "this Court may reach the issue for the first time on appeal because considering the issue would prevent the denial of his fundamental right to a jury trial."

Issues not raised before the trial court cannot be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). There are several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, including the following: (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014).

*Waiver*

The effectiveness of a waiver may be addressed for the first time on appeal to prevent the denial of a fundamental right. See *State v. Beaman*, 295 Kan. 853, Syl. ¶ 1, 286 P.3d 876 (2012).

> "A criminal defendant may waive the fundamental right to a jury trial if the court and State agree to the waiver. [Citations omitted.] But we have said these waivers should be strictly construed to ensure the defendant has every opportunity to receive a fair and impartial trial by jury. [Citation omitted.]" *Beaman*, 295 Kan. at 858.

"The test for determining the validity of a waiver of the right to a jury trial is whether the waiver was voluntarily made by a defendant who knew and understood what he [or she] was doing." *State v. Irving*, 216 Kan. 588, 589, 533 P.2d 1225 (1975). In *Irving*, our Supreme Court adopted the American Bar Association Standards and held "'[t]he court should not accept a waiver unless the defendant, after being advised by the court of his [or her] right to trial by jury, personally waives his [or her] right to trial by jury, either in writing or in open court for the record.' [Citation omitted.]" 216 Kan. at 590.

> "Whether a defendant waived the right to a jury trial is a factual question, subject to analysis under a substantial competent evidence standard of review. But when the facts of the district court's determination to accept a jury trial waiver are not disputed, the question whether the defendant voluntarily and knowingly waived the jury trial right is a legal inquiry subject to unlimited appellate review. [Citation omitted.]" *Beaman*, 295 Kan. at 858.

"A waiver . . . will not be presumed from a silent record." *Irving,* 216 Kan. at 589. In *State v. Frye*, our Supreme Court emphasized the ability to waive his or her right to a jury trial rests solely on the defendant and the responsibility to inform the defendant of

14

his or her right to a jury trial rests squarely on the district court. 294 Kan. 364, 370-71, 277 P.3d 1091 (2012). Here, Mullen argues his written waiver was not effective because the district court failed to inform him of the rights he would be giving up in waiving his right to a jury trial and failed to have him verbally waive his right to a jury trial on the record.

Prior panels of this court have held that in the absence of an effective waiver, the correct remedy is reversal for a new trial. *State v. Johnson*, 46 Kan. App. 2d 387, 264 P.3d 1018 (2011), *rev. denied* 293 Kan. 1111 (2012). In *Johnson*, the panel found the defendant, through a written stipulation, had waived his right to a jury trial, but the record failed to reflect the district court advised Johnson of his right to a jury trial on the record and reversed his conviction. 46 Kan. App. 2d at 400.

In *State v. Sykes*, 35 Kan. App. 2d 517, 524, 132 P.3d 485, *rev. denied* 282 Kan. 795 (2006), the panel relied on the *Irving* court's conclusion:

> "'In accord with this position we hold that in order for a criminal defendant to effectively waive his right to a trial by jury, the defendant must first be advised by the court of his right to a jury trial, and he must personally waive this right in writing or in open court for the record.' [*Irving*,] 216 Kan. at 590."

Our review of the record reflects the district court failed to personally advise Mullen of his right to a jury trial, and Mullen did not personally waive his right to a jury trial on the record. Since the record is silent on both points, we must reverse his conviction for possession of marijuana with intent to distribute and remand the case for further proceedings for the district court to explain on the record to Mullen his right to a jury trial. The district court may then ask whether he wants to personally waive his right to a jury trial on the record or proceed with a jury trial.

CONCLUSION

We find the affidavit submitted to obtain the anticipatory search warrant provided probable cause to justify the issuance of the search warrant for the house on Meadowsweet Lane by the issuing judge. Once control of the package was exercised by Mullen by removing it from the front porch and taking it into the house, he created the triggering event for the search warrant to be served. The Shawnee police officers had probable cause to execute the anticipatory search warrant. We affirm the district court's denial of Mullen's motion to suppress. The district court failed to personally explain to Mullen, on the record, his right to a jury trial. When the record is silent about the district court's explanation of one's right to a jury trial and the defendant's personal waiver of the right to a jury trial, we must reverse and remand for a new trial.

Affirmed in part, reversed in part, and remanded with directions.