NOT DESIGNATED FOR PUBLICATION

No. 113,771

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SUMMER D. HILL
*Appellant*.

MEMORANDUM OPINION

Appeal from Chautauqua District Court; FREDERICK WILLIAM CULLINS, judge. Opinion filed May 27, 2016. Affirmed in part, reversed in part, and remanded.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Amanda G. Voth*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., LEBEN, J. and HEBERT, S. J.

*Per Curiam*: Summer D. Hill was a passenger in a car that was stopped for a traffic infraction. During the traffic stop, which Hill alleges was unreasonably extended, a drug dog arrived at the scene and alerted. We find undisputed evidence that the traffic stop was not extended beyond its initial purpose, so we affirm the district court's denial of Hill's motion to suppress evidence. But we also find that the district court erred in failing to explain to Hill her right to a jury trial and to obtain her verbal waiver of that right on the record. Accordingly, we reverse and remand on that issue.

1

*Procedural Background*

The facts in this case are simple and undisputed. On May 18, 2014, Sedan Police Chief Nathan Rees, then a Chautauqua County Sheriff, was stopped at a convenience store in Sedan, Kansas. His attention was drawn to two women walking in and out of the store. The store clerk told Rees that the women had repeatedly asked him where the restroom was located. Rees observed the women stumbling around and noticed that their car had different tags on the front and the back.

As he followed the women out of town, Rees ran a check on the car's tags, and discovered neither tag was registered to the car. The car was also swerving over the yellow and whites lines on a narrow and hilly two-lane highway. Because of the car's tags and because of the erratic driving, Rees initiated a traffic stop. He then called Deputy Barry Speer as back-up because two people were in the car.

While waiting for Speer to arrive, Rees began his normal traffic stop procedures and contacted the driver. Hill was the passenger. Rees told the driver why he had stopped her and asked for her driver's license and proof of insurance. The driver was not able to provide proof of insurance because the car was uninsured. Rees then tried to sort out the mismatching tags issue. As Rees was finishing, Speer arrived on scene about 10 minutes after Rees initiated the stop.

Initially, Rees had no reason to believe drugs were in the car. But because of the women's behavior as he talked to them, and their behavior at the convenience store, Rees became curious about what was going on. He wanted to investigate further so he had Speer walk his drug dog around the exterior of the car. The drug dog indicated that drugs were in the car. On the driver's side, Rees found a prescription bottle with a white substance in it and a fentanyl patch. Before he began searching the passenger side, Hill told Rees to be careful because she had a bag under the seat that contained hypodermic

needles. Inside the bag, Rees found a hypodermic needle kit, a cooking spoon, several cut-up cigarette butts, and a used fentanyl patch. Hill told Rees that the substance on the cooking spoon was morphine.

The State charged Hill with one count of possession of fentanyl, one count of possession of morphine, and one count of possession of drug paraphernalia. Hill moved to suppress the evidence found under the front passenger seat, arguing that the search or the seizure was illegal. The district court held an evidentiary hearing on the motion and determined that probable cause existed for the stop and the search and that the seizure of evidence was legal under the United States and Kansas Constitutions. The district court also found that there was not an unreasonable delay between when the stop began and when the drug dog indicated that drugs were in the car. As a result, the district court denied the motion to suppress.

Hill then agreed to a stipulation of facts which she, her attorney, and the county attorney signed. The last stipulation stated:

> "That this cause shall be submitted to and may be tried by this Court without a jury and that judgment may be rendered on pleadings filed in this action and this stipulation and on the testimony and evidence admitted at the preliminary hearing . . . ."

At the beginning of the trial to the court on stipulated facts, which occurred by telephone, Larry Markel, the county attorney asked the district court to "inquire of Ms. Hill, again, to make sure, number one, that she's waiving her right to a jury trial and wants to proceed this way; and number two, agrees with the stipulations that have been filed." The judge then took a minute to try to get the signed stipulation, which the county attorney apparently was sending electronically that very moment. The judge then asked Hill the following:

3

"The Court: Ms. Hill, is this your signature on the stipulation?

"The Defendant: Yes, sir, it is.

"The Court: Okay. And that's a stipulation that you wish to make and you understand what its terms and conditions are?

"The Defendant: Yes, sir.

"The Court: Okay. It is still printing out, Mr. Markel."

The judge then noted the copy of the stipulation he received was not signed, and the county attorney replied that he had a signed copy and would file it that day. No more reference to a jury trial or its waiver was made. The district court then reviewed the documents, found Hill guilty beyond a reasonable doubt on each count, and signed the journal entry. Hill was sentenced to 12 months' probation, with an underlying 11-month jail sentence. She timely appeals.

I.      *Did the district court err by denying Hill's motion to suppress?*

Hill first claims that the district court committed reversible error by denying her motion to suppress. Hill does not challenge the legality of the initial stop of the car but argues that Rees unlawfully extended the traffic stop, stalling until the drug dog arrived. Hill contends that the unreasonable delay renders the search illegal and that all evidence discovered should be suppressed as fruit of the poisonous tree.

A. *Standard of Review*

When a suppression motion is filed, the State has the burden of establishing that the challenged seizure was lawful. *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886, (2014). When reviewing a suppression of evidence, we employ a bifurcated standard of review. *State v. Karson*, 297 Kan. 634, 639, 304 P.3d 317 (2013). First, without reweighing the evidence, we consider whether the district court's findings are supported

by substantial competent evidence. We then review the district court's legal conclusions de novo. If the material facts are undisputed, the issue becomes a question of law subject to unlimited review. 297 Kan. at 639.

B. *Car stops, generally*

Kansas law recognizes several types of police-citizen encounters. The first type is a consensual encounter that does not trigger protection under the Fourth Amendment. The second is an investigative detention that constitutes a Fourth Amendment seizure of limited scope and duration and must be supported by a reasonable suspicion of criminal activity. The third is an arrest—the most intrusive of Fourth Amendment seizures, which is reasonable only if supported by probable cause. *State v. Thompson*, 284 Kan. 763, 772, 166 P.3d 1015 (2007); *State v. DeMarco*, 263 Kan. 727, 734, 952 P.2d 1276 (1998). Although a warrant is generally required before the government may conduct a search, the inherent mobility of a car allows a police officer to search it without a warrant after the officer has probable cause to believe it contains contraband. *State v. Sanche-Loredo*, 294 Kan. 50, 58, 272 P.3d 34 (2012).

When a law enforcement officer displays authority and restrains an individual's liberty by stopping a car on a public roadway, a seizure occurs within the meaning of the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights, both of which protect individuals against unreasonable searches and seizures. See, *e.g.*, *State v. Garza*, 295 Kan. 326, 331-32, 286 P.3d 554 (2012); *State v. Moore*, 283 Kan. 344, 349, 154 P.3d 1 (2007); *State v. Anderson*, 281 Kan. 896, 901, 136 P.3d 406 (2006). For an officer's seizure of a citizen to be constitutionally reasonable, the officer must know of specific and articulable facts that create a reasonable suspicion the seized individual is committing, has committed, or is about to commit a crime or traffic infraction. *Garza*, 295 Kan. at 332 (citing K.S.A. 22–2402[1] and *Terry v. Ohio*, 392 U.S.

1, 88 S. Ct. 1868, 20 L.Ed.2d 889 [1968]). In the present case, Officer Rees' stop of the car Hill was in was an investigatory detention, or *Terry* stop.

When an officer conducts a *Terry* stop, the scope and duration of the seizure must be justified by the circumstances which rendered its initiation proper. *Terry*, 392 U.S. at 19-20; *Thompson,* 284 Kan. at 773-75. Thus, in order to stop and detain a person, a law enforcement officer must have a reasonable suspicion that criminal activity or a traffic infraction is taking place, has taken place, or is about to take place. K.S.A. 22-2402(1); *State v. DeMarco*, 263 Kan. at 734. An investigative detention must last no longer than is necessary to effectuate the purpose of the stop unless there is reasonable suspicion that some other crime has been or will be committed. *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983); *State v. Mitchell*, 265 Kan. 238, 244-45, 960 P.2d 200 (1998). Under *Terry*, an officer's action must be justified at its inception, and the detention must be reasonably related in scope to the circumstances which justified the interference in the first place. Hill's motion to suppress challenged only the scope of the seizure.

C. *Scope of seizure*

Hill argues that she was detained longer than necessary to complete the purpose of the stop. Hill claims that Rees asked for documentation only to allow enough time for the drug dog to arrive, that checking the driver's license should not have taken 10 minutes, that Rees intentionally stalled, and that Rees extended the purpose of the stop. But Hill offers no facts of record in support of those assertions.

It is uncontested that Rees stopped the car solely because of a traffic violation. That kind of stop, although initially lawful, can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.

6

"While a traffic infraction is a legitimate basis for law enforcement to initiate a car stop, the United States Supreme Court has emphasized that the seizure must be of short duration if it occurs "'in situations where'. . . the stop is justified by suspicion (reasonably grounded, but short of probable cause) that criminal activity is afoot.' *Arizona v. Johnson*, 555 U.S. 323, 330, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009) (quoting *Terry*, 392 U.S. at 24. "'[M]ost traffic stops,'" according to the United States Supreme Court, "'resemble, in duration and atmosphere, the kind of brief detention authorized in *Terry.*"' *Johnson*, 555 U.S. at 330 (quoting *Berkemer v. McCarty*, 468 U.S. 420, 439 n.29, 104 S. Ct. 3138, 82 L.Ed.2d 317 [1984]). Nevertheless, '[a] seizure that is justified solely by the interest in issuing a warning [or traffic] ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.' *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005)." *State v. Jones*, 300 Kan. 630, 639-40, 333 P.3d 886 (2014).

But the officer's subjective reason for stopping the car is not material. Under Kansas law, a traffic stop is not rendered invalid by the fact it is a mere pretext for a narcotics search. See, *e.g.*, *Garza*, 295 Kan. at 332; *Moore*, 283 Kan. at 350; *Anderson*, 281 Kan. at 901 136 P.3d 406; *State v. DeMarco*, 263 Kan. at 733. The United States Supreme Court holds the same view. *United States v. Robinson*, 414 U.S. 218, 221 n.1, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973); see *Whren v. United States*, 517 U.S. 806, 812, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996) ("an officer's motive [does not] invalidate [ ] objectively justifiable behavior under the Fourth Amendment").

Thus, the legitimacy of the duration of a traffic stop is not measured by an officer's subjective intent during the stop, but "by the time it takes for an officer to ask for, obtain, and record the driver's license, proof of insurance, and car registration; run a computer check; and issue a citation." *Jones*, 300 Kan. at 640. With exceptions not applicable here, once the officer determines that the driver has a valid license and the purpose for the traffic stop has ended, the driver must be allowed to leave without further delay. *Coleman*, 292 Kan. 813, 816, 257 P.3d 320 (2011); *Anderson*, 281 Kan. at 902; *State v. Mitchell*, 265 Kan. at 245. Reasonable suspicion is required to extend the traffic stop

7

longer than necessary to complete the purpose of the stop. See *State v. Coleman*, 292 Kan. at 816-17.

The record indicates that the traffic stop in this case was not prolonged more than was necessary to complete a traffic stop. Rees had no reason to believe that drugs were in the car when he called Speer as back-up for his own safety—Rees testified that he requested Speer's assistance because the car had two occupants and he did not know what the situation was. When Rees contacted the driver, he began his normal traffic stop procedures, asking for her driver's license and insurance. The driver was not able to produce proof of insurance because the car was not insured. Rees testified that while waiting for Speer he was actively engaged in his normal traffic stop routine. As Rees finished trying to determine if, or to whom, the car was registered, Speer arrived on the scene and used his drug dog, which alerted. Rees testified that because of the registration issue and because the car was uninsured, the car was going to be towed. According to Rees' report, 10 minutes elapsed between when he initiated the stop and when Speer arrived. That evidence was not contradicted, and Hill shows no facts supporting her theory that Rees stalled.

Based on these facts, Rees had not completed the purpose of the stop by the time Speer arrived on the scene. Because the purpose of the stop had not been completed, the use of the drug dog did not extend the length of the traffic stop.

A canine alert provides probable cause to search a car. See *State v. Barker*, 252 Kan. 949, 959-60, 850 P.2d 885 (1993). Dog sniffs are not considered to be searches, thus they do not implicate the Fourth Amendment even when a dog alert occurs during a warrantless sniff of the outside of a car during a lawful traffic stop. See *State v. Brewer*, 49 Kan. App. 2d 102, 110, 305 P.3d 676 (2013), *rev. denied* 298 Kan. 1204 (2014). Even if a car is stopped, the inherent mobility of a car allows a police officer to search it after establishing probable cause to believe it contains contraband. *Sanchez-Loredo*, 294 Kan.

at 58. Accordingly, the subsequent search of the car was lawful and the evidence discovered was admissible. The district court did not err by denying Hill's motion to suppress.

We briefly address Hill's argument that based on *State v. Smith*, 286 Kan. 402, 184 P.3d 890 (2008), the search should have never taken place because the search was unrelated to the original purpose of the stop. *Smith* stated the general rule that a law enforcement officer violates the United States and Kansas Constitutions by asking a passenger of a car stopped for a traffic infraction to consent to a search unrelated to the purpose of the traffic stop. 286 Kan. 402, Syl. ¶ 2. But that rule does not apply here, where Hill's consent was not the basis for the search.

Further, the Kansas Supreme Court has found Smith's rule to be outdated. *Smith* lacks an independent state constitutional analysis and, as the more recent decision in *State v. Morlock*, 289 Kan. 980, 988, 218 P.3d 801 (2009), clarified, to the extent that *Smith* analyzed the *federal* constitution, it is no longer good law. This is because *Arizona v. Johnson*, 555 U.S. 323, 333, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009), permits an officer to ask questions during a traffic stop *unrelated* to that stop as long as such questions did not "measurably extend" the length of the stop. Thus an officer's inquiries or actions unrelated to the justification for the initial stop do not convert the stop into an unlawful seizure so long as they do not measurably extend or prolong the stop. *Morlock*, 289 Kan. at 988. See *In re M.K.W.*, No. 103,414, 2010 WL 4977141, at *2-3 (Kan. App. 2010) (unpublished opinion). *Cf. Rodriguez v. United States*, 575 U.S. __, 135 S. Ct. 1609, 1614, 191 L. Ed. 2d 492 (2015).

II.      *Was Hill's waiver of her right to a jury trial effective?*

Hill also claims that the waiver of her right to a jury trial was ineffective. Specifically, she argues that the record lacks any indication of a discussion between her

and the district court regarding her right to a jury trial. Hill contends that because her written jury trial waiver was ineffective, her convictions should be reversed.

A. *Preservation*

Hill did not raise this issue before the district court and raises it for the first time on appeal. Generally, if an issue is not raised before the district court, it cannot be raised for the first time on appeal. *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). The State, however, agrees that this issue can be raised for the first time on appeal in this case to prevent the denial of a fundamental right. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014); *State v. Mullen*, 51 Kan. App. 2d 514, 524, 348 P.3d 619 (2015), *aff'd* No. 110,468, 2016 WL 1612920 (April 22, 2016). Instead of distinguishing *Mullen*, the State overlooks any procedural failure or lack of briefing, addresses the merits, and concedes that error occurred. Under these circumstances, we do the same.

B. *Standard of Review*

We generally apply a substantial competent evidence standard of review to the issue whether a defendant waived his or her right to a jury trial, because that issue presents a factual question. *State v. Beaman*, 295 Kan. 853, 858, 286 P.3d 876 (2012). But when the facts are undisputed, as they are here, whether a defendant voluntarily and knowingly waived his or her right to a jury trial is a question of law subject to unlimited review. 295 Kan. at 858.

C. *Effectiveness of Jury Trial Waiver*

In determining the validity of a jury trial waiver, we consider "whether the waiver was voluntarily made by a defendant who knew and understood what he [or she] was doing." *State v. Irving*, 216 Kan. 588, 589, 533 P.2d 1225 (1975). A district court should

not accept a waiver unless the district court advises the defendant of his or her right to a jury trial and the defendant personally waives his or her right in writing or in open court. 216 Kan. at 590. A jury trial waiver will not be presumed from a silent record. 216 Kan. at 589. Further, only the defendant has the ability to waive his or her right to a jury trial, and the district court has the responsibility of informing the defendant of his or her right to trial by jury. *State v. Frye*, 294 Kan. 364, 370-71, 277 P.3d 1091 (2012).

Hill signed a stipulation of facts. One of those facts was that she agreed to waive her right to a jury trial. At the hearing on the stipulated facts, the county attorney specifically asked the district court to question Hill about her jury trial waiver, but the district court did not do so. Instead, the district court asked Hill only whether she signed the stipulation and whether she wished to make the stipulation and understood its terms and conditions. After Hill responded affirmatively to those questions, the district court signed the journal entry, finding Hill guilty on each count.

Despite the county attorney's specific request, the district court never specifically informed Hill on the record of her right to a jury trial and she never verbally waived that right on the record.

> "'The test for determining the validity of a waiver of the right to a jury trial is whether the waiver was voluntarily made by a defendant who knew and understood what he [or she] was doing.' *State v. Irving*, 216 Kan. 588, 589, 533 P.2d 1225 (1975). In *Irving*, our Supreme Court adopted the American Bar Association Standards and held "'[t]he court should not accept a waiver unless the defendant, after being advised by the court of his [or her] right to trial by jury, personally waives his [or her] right to trial by jury, either in writing or in open court for the record." [Citation omitted.]' 216 Kan. at 590, 533 P.2d 1225." *State v. Mullen*, 51 Kan. App. 2d at 525.

That Hill agreed to a bench trial on stipulated facts which contained her waiver of her right to a jury trial is insufficient. In *Mullen*, we addressed this very issue:

"Mullen agreed to a bench trial on stipulated facts and was found guilty of possession of marijuana with intent to distribute. The written stipulation contained Mullen's waiver of his right to a jury trial. At the bench trial, defense counsel discussed Mullen's waiver with the district court. The record is silent about the district court explaining to Mullen his right to a jury trial or obtaining his verbal waiver of his right to a jury trial." *Mullen*, 51 Kan. App. 2d at 517.

We held the *Irving* test was not met and found reversible error in the district court's failure to explain to Mullen his right to a jury trial and obtain his verbal waiver of that right on the record before proceeding with the bench trial. See *Mullen*, 51 Kan. App. 2d at 525-26. We find this case to be persuasive and follow its holding here.

Based on the undisputed facts, we find reversal of Hill's convictions appropriate. Although the State argues that the case should simply be remanded to determine whether Hill's waiver was voluntary, we agree with the other panels that have found that when a defendant's waiver is ineffective, the appropriate remedy is reversal. See *Mullen*, 51 Kan. App. 2d at 525; *State v. Johnson*, 46 Kan. App. 2d 387, 400, 264 P.3d 1018 (2011), *rev. denied* 293 Kan. 1111 (2012); *State v. Sykes*, 35 Kan. App. 2d 517, 523, 132 P.3d 485, *rev. denied* 282 Kan. 795 (2006). Accordingly, Hill's convictions are reversed and this case is remanded so that Hill can effectively waive her right to a jury trial or proceed with a jury trial. See *Mullen*, 51 Kan. App. 2d at 526.

Affirmed in part, reversed in part, and remanded.