NOT DESIGNATED FOR PUBLICATION

No. 121,554

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

PAMELA A. YOUNKER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed August 28, 2020. Affirmed in part, reversed in part, and remanded with directions.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Natasha Esau*, assistant district attorney, *Keith Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., BRUNS and POWELL, JJ.

POWELL, J.:  After a bench trial on stipulated facts, the district court convicted Pamela A. Younker of one count of possession of methamphetamine, one count of possession of drug paraphernalia, and one count of possession of marijuana. Younker now appeals, alleging the district court committed three errors by (1) refusing to suppress the drug evidence, (2) quashing her subpoena compelling a police detective's testimony, and (3) not informing her of her right to a jury trial on the record before accepting her jury trial waiver. Because the district court failed to conduct a colloquy with Younker on the record informing her of her right to a jury trial before accepting her jury trial waiver,

1

we must reverse her convictions and remand for a new trial. We affirm the district court in all other respects.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 23, 2018, Younker was admitted to Hutchinson Regional Medical Center (HRMC) due to her hyperglycemia—a condition causing high blood sugar. HRMC is a private hospital, but some of its patients do receive Medicare or Medicaid.

After a brief stop in the emergency room, Younker was transferred to the ICU, where Anna Nininger, an HRMC nurse, attended to Younker. When Younker was admitted to the ICU, she kept her purse with her on her bed. Nininger asked to inventory Younker's purse in accordance with HRMC's policy requiring hospital staff to inventory each patient's belongings when admitted to the ICU. Younker allowed her to do so, and Nininger did not contact law enforcement before inventorying the purse. Nininger testified she was looking for valuables for safekeeping. Inside Younker's purse, Nininger found a black eyeglasses case, and inside the case was a plastic bag containing a white crystal substance that Nininger believed was drug paraphernalia. Nininger locked the purse in the nurse's station and called HRMC security.

Zachary Kelly, an HRMC security guard, responded to Nininger's request. Kelly was trained as a security guard by HRMC's head of security, a former police officer. Several other security guards were current or former law enforcement officers working a separate job at HRMC, but none were involved in this case, and Kelly himself was not law enforcement.

After Nininger handed him the purse, Kelly asked Younker if the purse belonged to her, and Younker confirmed that it did. Kelly searched her purse and found what

appeared to be an illegal crystalized substance, marijuana, and two pipes with burn marks. Kelly then called the Hutchinson Police Department.

At the suppression hearing, Kelly testified that HRMC had a policy to inventory patients' belongings when they are admitted. Nurses contacted him if they found suspected illegal substances because HRMC had a policy not to store illegal drugs. HRMC would contact the police if any illegal drugs were recovered. Kelly testified that the security guards at HRMC did not normally work with the Hutchinson Police Department unless they were needed to handle a criminal issue. Kelly knew of no Hutchinson Police Department policy requiring HRMC to notify law enforcement if illegal drugs were found. In his two-and-a-half or three years working at HRMC, Kelly believed he turned over drugs to law enforcement two or three times. This was the first time in her seven years Nininger saw law enforcement seize drugs at HRMC.

Officer Desarae Hogan of the Hutchinson Police Department responded to Kelly's call. Kelly turned over the eyeglasses case with the drugs and drug paraphernalia to Hogan. Hogan testified the Hutchinson Police Department does not provide security to HRMC.

Younker was charged with possession of methamphetamine, possession of drug paraphernalia, and possession of marijuana. Younker filed a motion to suppress the evidence seized from her purse, arguing HRMC, Nininger, and Kelly were state actors subject to the Fourth Amendment to the United States Constitution. Younker also subpoenaed Detective Daniel Styles as a witness for the suppression hearing. The district court quashed the subpoena at the State's request, finding Styles' testimony irrelevant because he was not involved in the case. After taking evidence at a suppression hearing, the district court denied Younker's motion to suppress.

The parties prepared and submitted agreed-upon facts in a signed stipulation of facts which included Younker's waiver of her jury trial right. The case proceeded to a bench trial, and the district court found Younker guilty of all three counts. Younker was sentenced to a controlling term of 15 months' imprisonment and placed on probation for 12 months.

Younker timely appeals.

I.      DID THE DISTRICT COURT ERR IN FINDING HRMC AND ITS EMPLOYEES WERE PRIVATE ACTORS?

Younker first argues the district court erred at the suppression hearing by ruling HRMC and its employees were private actors rather than agents of the State. Younker asserts HRMC became an agent of the government because it had a policy of searching anyone's belongings and turning over any found illegal contraband to law enforcement. She also argues HRMC was a government agent because it received state benefits in the form of Medicare and Medicaid payments for its patients. Younker further argues Kelly became an agent of the government because his primary instructor during his training was a former police officer and other former or current police officers worked at HRMC as security staff. Younker additionally claims Kelly acted as an agent of the government because he intended to assist law enforcement when he searched Younker's purse. Because HRMC and Kelly became state actors, Younker argues they were subject to the Fourth Amendment's prohibition against unreasonable searches and seizures and the evidence should be suppressed.

The State responds that HRMC and Kelly are private entities and not subject to the Fourth Amendment's restrictions. The State points to *State v. Cherry*, No. 115,238, 2017 WL 1426002 (Kan. App. 2017) (unpublished opinion), a case involving this identical issue and HRMC, to support its argument.

4

We review a district court's decision on a motion to suppress using a bifurcated standard. The district court's findings of facts are reviewed to determine if they are supported by substantial competent evidence without any reweighing of that evidence. The district court's legal conclusions are reviewed de novo. *State v. Garza*, 295 Kan. 326, 330-31, 286 P.3d 554 (2012). When the facts are undisputed, our review is de novo. *State v. Oram*, 46 Kan. App. 2d 899, 904, 266 P.3d 1227 (2011).

A.     *HRMC was a private actor.*

Generally, a search conducted by a private actor not acting as an agent of the government is not subject to the Fourth Amendment's protections against unreasonable searches. *State v. Smith*, 243 Kan. 715, 717-18, 763 P.2d 632 (1988). Whether those searches are "accidental or deliberate, . . . reasonable or unreasonable, [does not matter] because of their private character." *United States v. Jacobsen*, 466 U.S. 109, 115, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984). But, of course, "searches by agents of the State are subject to constitutional restrictions." *Smith*, 243 Kan. at 718.

The Fourth Amendment does not apply exclusively to the acts of law enforcement officers, and searches by private actors can fall under the Fourth Amendment if the private citizen has become an instrument or agent of the government. See *State v. Brittingham*, 296 Kan. 597, 602-03, 294 P.3d 263 (2013). To determine if a private citizen has become an instrument or agent of the government requires a two part inquiry: "(1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the party performing the search intended to assist law enforcement efforts or to further his or her own ends." 296 Kan. 597, Syl. ¶ 3.

Younker cannot satisfy either prong of the private actor test. First, there is no evidence the Hutchinson Police Department knew of, or acquiesced to, HRMC's policy of searching an ICU patient's belongings for inventory. Nininger testified at the suppression

5

hearing that HRMC was a private entity. Neither Nininger nor Kelly knew if the police department was aware of the inventory policy. Both testified Younker's bag was searched under HRMC's policy, not at the police department's direction. Second, the purpose of HRMC's policy was not to help the Hutchinson Police Department with investigating crimes but to ensure a patient's valuables were cataloged and protected while the patient was in the ICU. While the policy did require HRMC employees to turn over illegal drugs to the police, this was because HRMC did not store illegal drugs. Kelly testified that in his two-and-a-half or three years working at HRMC, he personally turned over drugs to law enforcement only two or three times. Nininger testified this was the first time she saw the police called for items found in an inventory search. The evidence in the record shows the infrequency of interaction between HRMC employees and law enforcement.

The unpublished *Cherry* case is instructive here. *Cherry* involved the same hospital and the same claim that HRMC and its employees were state actors. In preparation for Cherry's transfer to the ICU, a nurse's aide saw an inventory receipt lying on the table and put it in Cherry's pants pocket. When doing so, the nurse's aide noticed a jewelry box. Cherry told her not to worry about the box and to leave it alone. The nurse's aide called in a nurse and showed her the jewelry box. The nurse believed there was jewelry inside the box and opened it to inventory the contents. She found what she believed to be cocaine and had the charge nurse notify law enforcement.

At the suppression hearing, the nurse testified she had no contact with law enforcement before finding the jewelry box; the only contact she ever had with law enforcement involved them coming into the hospital to question people after a car accident or bringing in people with injuries. She testified she did not know if local law enforcement had a policy that HRMC must notify it of discovered illegal drugs, but HRMC had a policy against storing illegal substances. She also testified she opened the box because the hospital had a policy of inventorying patients' valuables.

The district court found the nurse and the nurse's aide were not agents of law enforcement. The panel found substantial competent evidence supported these findings because the nurse testified HRMC was a private hospital and she did not have any contact with law enforcement prior to finding the jewelry box. The panel found "no evidence to suggest HRMC coordinated with law enforcement to discover illegal substances." 2017 WL 1426002, at *3.

This case mirrors *Cherry*. The case involves the same issue, location, and agency actors. Both cases involved suspected illegal drugs found during an inventory search. Like in *Cherry*, Nininger and Kelly followed HRMC's inventory policy and called law enforcement only after they discovered illegal drugs. HRMC's policy was not an attempt to help law enforcement investigate drug possessors but to safely store the property of its patients.

Younker acknowledges *Cherry*'s similarities but attempts to distinguish them by pointing out the *Cherry* panel noted that Cherry claimed HRMC's employees were government agents because the hospital received government funds but failed to provide any authority to support this argument or cite anything in the record to show HRMC received government funds. See 2017 WL 1426002, at *4. At the hearing, Nininger testified that some patients at HRMC receive Medicare and Medicaid. Younker argues this shows HRMC receives government monies and satisfies *Cherry*'s deficiency.

But the *Cherry* panel never said a showing of government aid would transform HRMC and its employees into government actors. The panel was only noting Cherry's failure to provide any legal or factual support for his argument. 2017 WL 1426002, at *4. Indeed, other courts to consider this issue have found that hospitals receiving Medicare and Medicaid funds and being subject to state regulations do not transform a hospital into a state actor. See *Rockwell v. Cape Cod Hospital*, 26 F.3d 254, 258 (1st Cir. 1994); *Wheat v. Mass*, 994 F.2d 273, 275-76 (5th Cir. 1993).

7

Finally, we note that even if we are wrong about HRMC not being an agent for the government, it likely would not matter. Although we are not deciding the question, we suspect that a blanket inventory search policy conducted by a government entity—like the one employed here by HRMC—could pass Fourth Amendment scrutiny. See *State v. Shelton*, 278 Kan. 287, 299, 93 P.3d 1200 (2004) ("[I]nventory searches conducted pursuant to standard police procedures are reasonable.").

HRMC is not a state actor and its inventory policy did not make it an instrument or an agent of the State. As such, HRMC is not subject to the Fourth Amendment restriction against unreasonable searches.

B. *Kelly did not transform into an agent of the State.*

Younker also argues that even if HRMC is not an instrument or agent of the State, Kelly became an instrument or agent of the State. Younker bases this argument on two facts: (1) Current or former law enforcement trained him for his job at HRMC, and (2) other security staff members at HRMC were current or former law enforcement officers.

First, the fact that law enforcement trained Kelly does not make him an agent of the State. Younker claims law enforcement officers instigated and encouraged Kelly to call the police and give them the name of the patient whenever he finds drugs. But the testimony Younker relies on is Kelly explaining he was trained to follow HRMC's policy. Kelly testified he acted in accord with HRMC's policy, not to help law enforcement. Kelly's actions were not directed by law enforcement, but by HRMC. Kelly was not trained to act as an agent for the State; he was trained to follow HRMC's policies.

Second, the fact that current or former law enforcement officers worked at HRMC does not transform Kelly into an agent of the State. Kelly was not a law enforcement officer. Nothing in the record suggests one of his law enforcement affiliated coworkers

8

directed him to call police. Kelly searched Younker's purse and called the Hutchinson Police Department following HRMC's policy. He did so on his own decision based on HRMC's policy.

The argument that Kelly was an agent or instrument of the State fails the same test as HRMC. See *Brittingham*, 296 Kan. 597, Syl. ¶ 3. There is no evidence law enforcement knew of or acquiesced to HRMC's policy in general or in Kelly's search of Younker's purse. Nothing in the record shows HRMC's inventory policy or Kelly's actions were those of a state actor. HRMC's inventory policy was for its own goal of protecting a patient's property. The district court did not err in refusing to suppress the evidence.

II.      DID THE DISTRICT COURT ERR IN QUASHING YOUNKER'S SUBPOENA FOR STYLES?

Younker also complains that the district court erred by quashing her subpoena for Styles of the Hutchinson Police Department to testify at the suppression hearing. Younker argues Styles' testimony was both proper and relevant to help establish the Hutchinson Police Department was aware of HRMC's inventory policy and the actions of HRMC's staff. The State responds that Styles' testimony would have been irrelevant because he was not involved in this case and Younker could have asked Hogan many of the proffered questions. Alternatively, the State argues any error in quashing the subpoena was harmless because Styles' testimony based on the proffer would not have affected the outcome of the suppression hearing.

The legal basis of a district court's decision to admit or exclude evidence is reviewed de novo. When a party challenges a district court's admission or exclusion of evidence, our first consideration is relevance. Unless prohibited by statute, constitution, or court decision, all relevant evidence is admissible. *State v. Gunby*, 282 Kan. 39, 47, 144 P.3d 647 (2006); see K.S.A. 60-407(f). Relevant evidence is "evidence having any

tendency in reason to prove any material fact." K.S.A. 60-401(b). "To establish relevance, there must be some material or logical connection between the asserted facts and the inference or result they are intended to establish." *Gunby*, 282 Kan. at 47.

At the suppression hearing, Younker's attorney proffered the questions she would have asked Styles if he had testified:

"Regarding Officer Styles my question is, does he recall that we had a conversation in the hallway about [a] similar fact pattern to this case? Does he recall that in that case an individual's property had also been seized by the Hutchinson Police Department? Does he recall that in that case the property was turned over and he was given and a drug test was done and that individual was also charged just as in this case with possession of methamphetamine? I'm sure he does recall because he was the arresting officer in that case. We had discussed that in the hallway. Does he recall in the hallway when we were discussing this case he told me that officers ["]are there all the time,["] at the hospital? Does he recall that we discussed what that means, ["]all the time["]? Does he recall telling me that officers are often called to the hospital to retrieve alleged drugs and that the name is given to officers? Does he recall telling me that he believed that to be a violation of [HIPAA] and [the hospital's] own policy? He said these things to me in the [hallway] and I wanted to present that to the Court to fulfill the requirement that the police department is aware of this conduct and acquiesces in it. And I also would ask Officer Styles if he is aware that other current or former police officers are working at the hospital. He is aware that either current or former sheriff department, Buhler, Haven, Burton police officers, sheriffs and even, yes, the chief of police for Burton are working at the hospital. If he is aware of any conversations in which the hospital security staff has determined that they are going to turn over drugs and names to the police officers to insure prosecution. I don't know what his response would be to that."

Styles was not involved in this case, and he lacked personal knowledge about the relevant facts here. See K.S.A. 60-419 (requiring witness to have personal knowledge on relevant matter to testify). The discussion Younker's attorney had with Styles involved an

10

unknown, separate case. Even so, Younker sought to use Styles to prove HRMC was a government actor because the Hutchinson Police Department was aware of HRMC's inventory policy. Many of the questions Younker's attorney proffered were not relevant to this case. Styles' opinion on HIPAA or how often the Hutchinson Police Department responded to reports of criminal activity at HRMC were not relevant to whether the police department directed HRMC employees. The relevant questions, such as whether police were aware of HRMC's policy, the knowledge of HRMC employees with law enforcement connections, or the details of HRMC's policy to turn over the drugs and names of patients to officers, were asked of Hogan—the responding officer in this case.

The district court did not err in quashing the subpoena for Styles. The proffered testimony was not relevant to this case, and the relevant portion of the proffered testimony was asked of Hogan.

Even if we were to agree with Younker that Styles' testimony was relevant, we find any error in excluding this testimony harmless. Unless justice so requires, no error in excluding evidence is grounds for a new trial or for vacating, modifying, or otherwise disturbing an order. K.S.A. 2019 Supp. 60-261. Any error in quashing the subpoena would not have affected the outcome of the suppression hearing. Styles' proffered testimony was insufficient to establish HRMC employees were collecting evidence at the direction of the Hutchinson Police Department.

III.    DID YOUNKER KNOWINGLY AND VOLUNTARILY WAIVE HER RIGHT TO A JURY TRIAL?

Finally, Younker claims she did not waive her right to a jury trial. Younker asserts the district court never advised her of her right to a jury trial on the record. The State responds that Younker signed a stipulation of facts that included the stipulation she was aware of her right to a jury trial and waived that right. However, the State acknowledges

the district court did not advise Younker of her right on the record but asserts the waiver as part of the stipulation of facts was sufficient.

The Sixth Amendment to the United States Constitution and §§ 5 and 10 of the Kansas Constitution Bill of Rights, as well as Kansas statute, guarantee a criminal defendant's right to a jury trial. *State v. Redick*, 307 Kan. 797, 803, 414 P.3d 1207 (2018); see K.S.A. 22-3403(1). Whether a defendant waived the right to a jury trial is a factual question, subject to review for substantial competent evidence. When the facts are undisputed, whether the defendant knowingly and voluntarily waived the jury trial right is a legal question subject to unlimited review. "The test for determining the waiver's validity is whether it was voluntarily made by a defendant who knew and understood what he or she was doing. Whether that test is satisfied depends upon the particular facts and circumstances in each case." *State v. Beaman*, 295 Kan. 853, 858, 286 P.3d 876 (2012).

Here, the parties do not dispute the relevant facts related to the jury trial waiver, and Younker acknowledges she did not raise this issue before the district court. Generally, issues, even constitutional issues, are not properly preserved for appeal if not addressed by the district court. But a few exceptions to this rule exist, including the one asserted by Younker:  An issue may be considered for the first time on appeal if "necessary to serve the ends of justice or to prevent the denial of fundamental rights." *State v. Anderson*, 294 Kan. 450, 464-65, 276 P.3d 200 (2012). The right of a criminal defendant to a jury trial is a fundamental right. *State v. Irving*, 216 Kan. 588, 589, 533 P.2d 1225 (1975); see *State v. Johnson*, 46 Kan. App. 2d 387, 397, 264 P.3d 1018 (2011) (validity of jury trial waiver addressed first time on appeal). Therefore, we will address the issue.

Defendants may waive their right to a jury trial. K.S.A. 22-3403(1). A district court cannot accept a defendant's jury trial waiver unless the defendant personally waives

12

the right, either in writing or in open court on the record, after the district court informs the defendant of the right to a jury trial. *Redick*, 307 Kan. at 803; *Irving*, 216 Kan. at 589-90. A defendant must be advised by the district court of the right to a jury trial before the defendant can personally waive the right. *Irving*, 216 Kan. at 590. Waiver of the right to a jury trial is strictly construed "to afford a defendant every possible opportunity to receive a fair and impartial trial by jury." 216 Kan. at 589. "[A] waiver of the right to a jury trial will not be presumed from a silent record." 216 Kan. at 589; *State v. Williams*, 57 Kan. App. 2d 346, 350, 451 P.3d 46 (2019).

Here, Younker signed a stipulation of facts—acknowledging she was fully aware of and was waiving her jury trial right—that was presented to the district court on the record. The district court did not file the signed stipulation, and it is not included in the appellate record. An unsigned copy is in the record. The State asserts this is a sufficient waiver of her right to a jury trial.

In *Johnson*, the State admitted the district court did not personally advise the defendant of his right to a jury trial but argued the stipulation of facts served either as a waiver of the defendant's rights or an invitation to error for the district court. The stipulation expressly stated counsel advised Johnson of his right to a jury trial. The panel noted: "Kansas courts have consistently held that a criminal defendant's jury trial waiver is ineffective when the record on appeal fails to show that the district court personally advised the defendant of his or her right to a jury trial." 46 Kan. App. 2d at 399; see *State v. Bowers*, 42 Kan. App. 2d 739, 741, 216 P.3d 715 (2009) ("[T]he advisement regarding a jury trial must come from the court and not from counsel."). The *Johnson* panel reversed the conviction because the record contained no indication the district court advised the defendant of his jury trial right. 46 Kan. App. 2d at 400.

Another panel reached the same conclusion in *State v. Mullen*, 51 Kan. App. 2d 514, 348 P.3d 619 (2015), *aff'd* 304 Kan. 347, 371 P.3d 905 (2016). In *Mullen*, the

defendant agreed to a bench trial on stipulated facts and was found guilty. The written stipulation included a waiver of the defendant's right to a jury trial. At the bench trial, defense counsel discussed the waiver with the district court, but the district court did not, on the record, explain to the defendant his right to a jury trial or obtain the defendant's verbal waiver of his right. The panel reversed the conviction because the district court did not "personally advise Mullen of his right to a jury trial, and Mullen did not personally waive his right to a jury trial on the record." 51 Kan. App. 2d at 526.

As these cases show, the district court was required to personally advise Younker of her right to a jury trial on the record for the waiver to be valid. As the State concedes, this did not happen. The only waiver of Younker's jury trial right is a single sentence in the stipulation of facts. This is insufficient to constitute a valid waiver of her right to a jury trial.

The State attempts to circumvent this stumbling block by arguing the signed stipulation of facts constitutes a valid waiver of Younker's right to a jury trial. But "*Irving* . . . requires that the written waiver be after the defendant is 'advised by the court of his right to a jury trial.'" *State v. Frye*, 294 Kan. 364, 373, 277 P.3d 1091 (2012); see *Irving*, 216 Kan. at 590. The district court never advised Younker of her right.

Because the district court did not advise Younker of her right to a jury trial on the record, we must reverse Younker's convictions and remand the case to the district court for a new trial. While it may seem strange to remand a case where any trial—whether it be by court or jury—is limited to the stipulated facts, it is the result directed by *Irving*'s holding and followed by another panel of our court. See *State v. Raikes*, 49 Kan. App. 2d 681, 682, 313 P.3d 94 (2013).

Affirmed in part, reversed in part, and remanded with directions.