NOT DESIGNATED FOR PUBLICATION

No. 114,564

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LARRY DEAN SCHENK,
*Appellant*.


MEMORANDUM OPINION

Appeal from Montgomery District Court; ROGER L. GOSSARD, judge. Opinion filed November 18, 2016. Affirmed in part, reversed in part, and remanded.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Officer, for appellant.

*Natalie Chalmers*, assistant solicitor general, *Derek Schmidt*, attorney general, for appellee.


Before MCANANY, P.J., PIERRON, J., and BURGESS, S.J.

*Per Curiam*: At a bench trial on stipulated facts, the district court convicted Larry Dean Schenk of one count of possession of opiates/opium/narcotic drugs and certain stimulants, a level 5 nonperson felony, in violation of K.S.A. 2013 Supp. 21-5706(a), and one count of use/possess with the intent to use drug paraphernalia, a class A nonperson misdemeanor, in violation of K.S.A. 2013 Supp. 21-5709(b)(2). The district court imposed 11-month and 6-month prison sentences, respectively, and ordered the sentences to run concurrently. The district court suspended the sentences and granted Schenk 12 months' probation. Schenk filed this direct appeal.

1

FACTUAL AND PROCEDURAL BACKGROUND

In September 2013, in Independence, Kansas, Detectives Joseph Isaac Dye and Christopher V. Williams observed a pick-up truck crossing left of the center line and then failing to yield to oncoming traffic when making a left-hand turn. Larry Dean Schenk was a passenger in the cab of that truck. The driver's actions nearly caused an accident. The police activated their lights to initiate a traffic stop of the vehicle, but it did not pull over.

Maintaining a distance of approximately one car-length behind the vehicle, both detectives observed Schenk's unobstructed silhouette making furtive movements, such as leaning to the right, or bending down and forward, appearing as if he was trying to shove something under the seat or between the seats to his left. The detectives found these "unusually furtive movements" atypical for a traffic stop. Additionally, the driver did not stop immediately, but rather continued to drive for another 2 to 3 blocks before pulling over; the detectives suspected that Schenk's movements indicated an attempt to hide a weapon in the cab of the truck. While following the vehicle, the detectives called in the license plate and radioed for backup.

Sergeant Don Yaus arrived as backup at approximately the same time the detectives approached the cab of the truck. The officers' approach was before getting a full report on the license tag which was not unusual. Neither of the officers had their service weapons drawn as they approached the truck.

Detective Williams approached the driver's side of the vehicle while Detective Dye and Sergeant Yaus approached Schenk on the passenger side. Out of concern that there was a weapon somewhere in the passenger compartment, the detectives had both men exit the vehicle. This is common practice if officers suspect a weapon is involved. Detective Dye requested that Schenk step out of the vehicle, which he did without

2

incident; however, Schenk left the door to the passenger side of the vehicle open. Sergeant Yaus conducted a weapons pat-down of Schenk while Detective Dye watched the driver's interaction with Detective Williams.

During the pat-down of Schenk three items were discovered:  a pocketknife; a lighter in the right front pants pocket; and a wallet. Sergeant Yaus handed Schenk's wallet to Detective Dye. Detective Dye testified that he obtained Schenk's consent to retrieve his identification from the wallet, intending to run it through the system to search for any warrants for Schenk and the driver of the vehicle. Schenk was uncertain whether he consented to Detective Dye retrieving his identification from his wallet. Schenk asserts that retrieval of his identification was not necessary since Detective Dye recognized him. The record is silent regarding police policy for requesting identification of a subject who is known to the requesting officer. Testimony revealed that calling in a warrant search is more efficient and reliable when using identification, rather than asking a subject for all of the necessary details.

When Detective Dye removed Schenk's identification from his wallet, he noticed a folded piece of burnt foil behind it in the cardholder compartment. Detective Dye asked Schenk what it was, and Schenk replied, "Shit, that's some burnt up shit." Detective Dye then opened the burnt foil and observed what he believed to be methamphetamine. Detective Dye testified that Schenk was arrested based on what Schenk said about the substance. Detective Dye told Sergeant Yaus to handcuff Schenk. Detective Dye then went to speak with Detective Williams. The substance in the burnt foil was field-tested, as well as subsequently tested by the Kansas Bureau of Investigation, and both tests of the substance were positive for methamphetamine.

Shortly after or nearly simultaneously to the weapons pat-down of Schenk, Detective Williams requested the driver's identification and asked the driver to exit the vehicle. Detective Williams then conducted an incident-free weapons pat-down of the

3

driver. Both the driver and Schenk continued to have access to the passenger compartment of the vehicle, and the officers "felt threatened . . . for [their] safety."

Detective Williams then initiated a weapons search of the cab of the truck, limited to areas in which weapons might be placed or hidden, including the center seat console. Although he did not find a weapon, Detective Williams, a narcotics detective, did observe a glass pipe containing a burnt residue located in the center console of the seats. Detective Williams knew from his experience and training that this pipe was drug paraphernalia.

Detective Dye left Sergeant Yaus to handcuff Schenk and walked around the truck to Detective Williams. At this time, Detective Williams informed Detective Dye that he had observed a pipe in the cab of the truck. Based on this discovery, another officer who had arrived on-scene handcuffed the driver. Detective Williams was unaware of Detective Dye's discovery of the methamphetamine in Schenk's wallet until after he completed the weapons search of the cab of the truck. Detective Williams instructed Detective Dye to drive the vehicle to impound so that they could get a search warrant for the vehicle. There have been no objections or challenges to the validity or execution of the search warrant for the vehicle.

Schenk filed a motion to suppress from evidence "all items seized from the search of [the driver's] vehicle and search of [Schenk's] wallet and order [sic] suppressing statements obtained from Mr. Schenk made in connection with the illegal search of his wallet." The detectives testified that the initial weapons search of the cab of the truck was based on the furtive movements of Schenk when they activated the lights and attempted to initiate the traffic stop. Detective Williams testified that the initial search was a safety issue "based upon my training and experience, when people duck underneath the cars [sic] there's plenty of scenarios where officers get killed." During the protective search of the vehicle, Detective Williams also observed on the floor of the passenger side of the

cab several hand-held tools (*e.g.*, wrenches and a sledgehammer) and the driver's wallet containing at least $300 in cash.

After hearing the evidence on Schenk's motion and, after deliberation, the district court determined that based on state and federal cases, and that "under the totality of the circumstances that the inspection of the vehicle by law enforcement officers was not unconstitutional or unreasonable." The district court ruled that the inspection of the truck's cab was based upon facts that gave rise to the officers' reasonable suspicion that a protective search of the vehicle for weapons was appropriate. As a result, the district court concluded that the motion to suppress "is and should be denied." The district court did not directly rule on the issues associated with Schenk's wallet or his statements. The record does not reflect that Schenk objected to the lack of findings on the wallet-related issues.

In early June 2014, Schenk appeared with his counsel and stated he was "inclined to go to trial" at the end of the month. However, at this same hearing, Schenk's counsel stated that they were in discussions with the prosecutor to avoid a trial and told the district judge that he need not summon a jury:

> "THE COURT: In the meantime I have to summons a jury?
> "[SCHENK'S COUNSEL]: I don't think so, Your Honor. We're in the position whether—we've come to the agreement to submit this to trial instead [on] stipulated facts or potentially pursue diversion for part of the charges. No jury.
> "THE COURT: If I cancel the—cancel the jury trial we'll either reschedule it later and you'll waive speedy trial rights?
> "[SCHENK'S COUNSEL speaking to Schenk]: You understand what he's talking about in terms of that?
> "[SCHENK]: Yes.
> "[SCHENK'S COUNSEL]: Yes, Your Honor.
> . . . .

5

"THE COURT: . . . We're going to strike the jury trial. You want to make sure Ellen knows that before she sends those [summons] out today?

. . . .

"THE COURT: She's working on them as we speak."

As of the end of June 2014, according to Schenk's counsel, the parties were in agreement to submit the case to trial before the district court on stipulated facts, rather than a jury trial: "[T]he jury trial scheduled herein was stricken from the [district] court's jury trial calendar and [Schenk] entered his waiver of his right to speedy trial." At the next hearing, Schenk, with his counsel, affirmed to the district court that they were in agreement with the prosecutor to "submit this to trial to the bench on a set of stipulated facts and objections. . . . We have previously waived speedy trial in this matter." The district judge, again, asked Schenk if he waived his right to a speedy trial, to which Schenk replied, "Yes, sir."

By mid-August 2014, at a hearing with Schenk present, a tentative bench trial date was set for late-September 2014 to commence if a set of stipulated facts were not agreed upon by then. In late-September, Schenk's counsel requested a continuance from the scheduled bench trial so that the parties could complete their agreed stipulation of facts; the district court set the next status hearing for mid-October. Finally, in mid-October 2014, Schenk's counsel informed the district court that Schenk signed the agreed stipulation of facts, and that it would be submitted "to the Court for trial to the bench on the set of stipulated facts." The district judge replied, "Okay. Good. I [will] look at all that and [will] write you a nice letter and tell you whether he's guilty or not guilty, right?" Schenk's counsel replied, "Yes, Judge."

In the agreed stipulation of facts, Schenk renewed his objections to the search of his wallet, to the seizure of the contents of the wallet, and the admission of those contents into evidence.

6

After the district court reviewed the record, it found Schenk guilty beyond a reasonable doubt of both drug-related charges. The district court further affirmed its previous decision on Schenk's motion to suppress and stated the motion "should be and is hereby again denied," and provided the same supporting rationale regarding the search of the vehicle. Again, the record reflects that Schenk did not object to the lack of findings on the wallet-related issues.

At the sentencing hearing, Schenk made no statement on his own behalf and the district court sentenced Schenk to 12 months' probation on each charge, to run concurrently, with underlying jail sentences of 11 months for the felony charge and 6 months for the misdemeanor charge. Schenk timely appeals.

WAS THE DISTRICT COURT'S DENIAL OF SCHENK'S MOTION TO SUPPRESS BASED UPON SUBSTANTIAL COMPETENT EVIDENCE?

Schenk claims that the district court committed reversible error by denying his motion to suppress and argues that the facts presented do not give rise to reasonable suspicion to perform a *Terry* stop. See *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). According to Schenk, finding no weapons upon the individuals during the pat-downs, the officers' concern for their safety should have been satisfied. The seizure and subsequent search of Schenk's wallet, as well as the search of the cab of the truck, were thus, not protective, and any evidence discovered should have been suppressed.

*Standard of Review*

When reviewing an evidence suppression issue, this court employs a bifurcated standard of review. *State v. Karson*, 297 Kan. 634, 639, 304 P.3d 317 (2013). First, without reweighing the evidence, this court considers whether the district court's findings are supported by substantial competent evidence. This court then reviews the district

7

court's conclusions de novo. If the material facts are undisputed, the issue becomes a question of law subject to unlimited review. 297 Kan. at 639.

*Searches and Seizures*

Both the Fourth Amendment to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights protect individuals from unlawful searches and seizures. *State v. Garza*, 295 Kan. 326, 331, 286 P.3d 554 (2012). Warrantless searches are per se unreasonable unless the search fits one of the recognized exceptions. *State v. Sanchez-Loredo*, 294 Kan. 50, 55, 272 P.3d 34 (2012). One such exception is probable cause plus exigent circumstances. 294 Kan. at 55. The probable-cause-plus-exigent-circumstances exception includes the "automobile exception," which states that a vehicle's mobility provides, without the necessity of proving anything more, exigent circumstances. 294 Kan. 50, Syl. ¶ 4. Probable cause can be established by "specific and articulable facts which, taken together with rational inference from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21.

Here, the probable-cause-plus-exigent-circumstances and automobile exceptions apply. Probable cause existed for the traffic stop because of the uncontested traffic infractions. Probable cause existed for the initial warrantless searches. While the driver failed to pull over after a longer than normal period of time, Schenk appeared by his furtive movements to use that time to hide contraband—feared to be a weapon—in the cab of the truck. Finally, exigent circumstances existed because the vehicle was mobile.

Schenk does not dispute that probable cause existed to stop the vehicle, or to search his person during the pat-down. Schenk argues instead that the officers' concern for their safety should have been satisfied by the individual pat-downs of Schenk and the driver. In other words, Schenk argues that the protective search of the cab of the truck was outside the scope of the *Terry* stop, as was the foray into his wallet. Schenk claims

8

that his wallet was illegally seized and searched, and the cab of the truck was illegally searched, so the evidence discovered in these two spaces should have been suppressed.

*The Vehicle*

A traffic stop is a seizure. *Garza*, 295 Kan. at 332. For a seizure to be constitutionally reasonable, the law enforcement officer "must know of specific and articulable facts that create a reasonable suspicion the seized individual is committing, has committed, or is about to commit a crime or traffic infraction. [Citations omitted.]" *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886 (2014). In this case, Schenk does not dispute the underlying traffic infractions that triggered the traffic stop. He disputes the officers' reasonableness in conducting a protective search of the cab of the truck.

Relying on *State v. Epperson*, 237 Kan. 707, 703 P.2d 761 (1985), Schenk argues that once the officers had removed Schenk and the driver from the vechile and performed the pat-downs, the concern for the officers' safety should have been satisfied. In support of this argument, Schenk claims that neither he nor the driver could have gotten past the three officers present at the time to obtain a weapon from the vehicle. Schenk also argues that he would not have been able to get out of his handcuffs to obtain a weapon.

The State argues that it is mere speculation by Schenk to suggest that because the officers outnumbered Schenk and the driver that the officers need not have reasonably worried about the men attempting to secure a weapon from the uncleared vehicle. Further, the State argues that since no weapons were found on either Schenk's or the driver's person, there was a "heightened" reasonable belief that there might still be an accessible weapon in the vehicle. The State's arguments have merit.

The facts of this case are distinguished from those in *Epperson* in several ways. In this case, the vehicle was observed violating traffic laws, the driver failed to pull over for

9

several blocks while Schenk made furtive movements suggesting he was hiding a weapon, the officers were concerned for their safety, the officers did call for backup, and the officers began the encounter by having the men exit the vehicle and undergo pat-down searches for weapons. *Cf. Epperson*, 237 Kan. at 714-15. Further, the timeline of events indicates that Detective Williams was conducting the protective search of the vehicle's interior while the pat-down of Schenk was still being concluded with the discussion of the burnt foil found behind his identification. Schenk was not handcuffed by Sergeant Yaus until Detective Dye left him to reconnoiter with Detective Williams at the back of the vehicle. It was at this meeting that Detective Dye learned of Detective Williams' observation of drug paraphernalia in the cab of the truck. This indicates that both Schenk and the driver were being handcuffed at approximately the same time, after the protective pat-downs and protective search of the cab had been concluded. Consequently, neither Schenk nor the driver were restrained during at least a portion of the protective search of the vehicle.

A search of the passenger compartment of a vehicle, if limited to those areas in which a weapon may be placed or hidden, is permissible if the police have a reasonable belief based on "'specific and articulable facts which, taken together with the rational inferences from those facts,'" reasonably warrant the officers' belief that the suspect is dangerous and that he may gain immediate control of weapons. *Michigan v. Long*, 463 U.S. 1032, 1049-50, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983) (quoting *Terry*, 392 U.S. at 21) (vehicle searched for weapons after Long was patted down and while he was outnumbered by police officers). In this case, the protective search of the truck's cab was founded on the officers' apprehensions of a weapon after observing Schenk's atypical and furtive movements during the delay in the driver pulling over. The search of the truck's cab was limited to areas in which a weapon could be placed or hidden.

The totality of the circumstances do not support Schenk's argument that the officers acted on an unparticularized suspicion or hunch. Rather, the officers testified as

10

to their observations of Schenk's behavior, the delay in the driver pulling over, their apprehensions because of these observations, and what these facts could mean in the context of their experience and training. See *Terry*, 392 U.S. at 27; *United States v. Arvizu*, 534 U.S. 266, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002); *State v. Johnson*, 293 Kan. 959, 966, 270 P.3d 1135 (2012). These circumstances are enough to find that the officers had reasonable suspicion that there was a weapon accessible to Schenk within the cab of the truck. Accordingly, the protective search of the vehicle was not outside the scope of the *Terry* stop, and the district court did not err in denying Schenk's motion to suppress evidence from the warrantless search of the vehicle.

*Seizure of the Wallet*

Schenk appeals the seizure and subsequent search of his wallet. However, Schenk did not raise the seizure of the wallet as an issue before the district court. Schenk only raised the search of the wallet itself. Constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). Further, generally, if any issue is not raised before the district court, it cannot be raised for the first time on appeal. *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Although Schenk's motion to suppress requested generally that the district court suppress "all evidence and statements obtained by an unlawful and unconstitutional seizure and search," the seizure of the wallet was not specified. Rather, Schenk requested suppression of "all *items seized from the . . . search of* [*Schenk's*] *wallet*." (Emphasis added.) The item seized from the search of his wallet was the burnt foil containing the methamphetamine, not the wallet itself.

There are several recognized exceptions to this general rule against raising issues for the first time on appeal. See *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). However, Schenk does not claim that any of these exceptions apply to the issue of the seizure of his wallet during the pat-down. Further, Schenk offers no explanation to

11

this court why this issue should be addressed for the first time on appeal. Accordingly, the issue of the seizure of Schenk's wallet is not properly before this court. See *Godfrey*, 301 Kan. at 1043-44 (failure to brief an exception means the issue will not be addressed); Kansas Supreme Court Rule 6.02(a)(5) (2015 Kan. Ct. R. Annot. 41).

*Search of the Wallet*

Schenk appeals the search of his wallet. The record demonstrates that Sergeant Yaus located the wallet in Schenk's pocket, along with the pocketknife and lighter, and handed the wallet to Detective Dye, who then requested Schenk's permission to retrieve his identification. Schenk was uncertain whether he consented to Detective Dye retrieving his identification. Nevertheless, Schenk argues that the search of his wallet was outside the scope of the *Terry* stop.

The bulk of Schenk's motion to suppress before the district court addressed the search of the vehicle and did not specifically argue that the search of his wallet during the pat-down was improper. Even during references to the pat-down in the motion, Schenk simply indicated that the men made no "furtive movements towards the vehicle." Schenk's motion to the district court made no argument pertaining to the search of the wallet, but merely made a reference to the illegality of a "warrantless search" of the wallet in the conclusion of the motion. Further, the district court did not make any specific findings of fact regarding the search of the wallet, likewise limiting its discussion in the decision to the constitutionality and appropriateness of the protective search of the vehicle.

The State has the burden of establishing the scope and voluntariness of the consent to search, and whether consent is voluntary is an issue of fact which appellate courts review to determine if substantial competent evidence supports the trial court's findings. *State v. James*, 301 Kan. 898, 909, 349 P.3d 457 (2015). If the parties do not dispute the

12

material facts, the suppression issue is solely a question of law. *State v. Spagnola*, 295 Kan. 1098, 1104, 289 P.3d 68 (2012). Here, the record reflects that the State offered testimony that the scope of the search to which Schenk voluntarily consented was to retrieve his identification from his wallet so that the detective could run a routine warrant search. Schenk did not object to the lack of findings below regarding the wallet, and consequently, this court will presume that the district court made the necessary findings to support its conclusions in denying Schenk's motion. *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009).

Schenk argues that consent granted during an illegal seizure is tainted, and so even if he did voluntarily consent to the retrieval of his identification, the fruits of that consent should be suppressed. For this proposition, Schenk relies on *State v. Grace*, 28 Kan. App. 2d 452, 456, 17 P.3d 951 (2001), which held that consent obtained during an illegal detention is tainted. However, this argument fails for two reasons. As discussed above, the illegal seizure of the wallet as an issue was not properly before this court and Schenk neither argues, nor does the record support that he was illegally detained.

Further, Schenk does not claim that he did not give consent—only that he is uncertain on the matter—and he makes no claim that the officers exceeded the scope of his consent to retrieve the identification. Accordingly, once the identification was removed and the burnt foil containing methamphetamine was in plain view, it was subject to legal seizure. *State v. Fisher*, 283 Kan. 272, 292-99, 154 P.3d 455 (2007) (plain view); *State v. Ewertz*, 49 Kan. App. 2d 8, 14, 305 P.3d 23 (2013) (plain view).

Lastly, Schenk argues that before the officers searched his wallet and discovered the burnt foil, there was no sign of drug activity. However, this claim is not supported by the record. The record establishes that Detective Williams conducted the protective search of the truck's cab and discovered the drug pipe nearly simultaneously with Detective Dye discovering the burnt foil behind Schenk's identification. As the officers

independently found drug paraphernalia in the center seat console of the truck, both men would likely have been taken into custody, and their possessions inventoried at the police station. *Long*, 463 U.S. at 1050 (police cannot be required to ignore contraband other than weapons; the Fourth Amendment does not require suppression in such cases). Schenk's identification would have been sought at that time, and the burnt foil with methamphetamine inevitably discovered. *Utah v. Strieff*, 579 U.S. __, 136 S. Ct. 2056, 2061, 195 L. Ed. 2d 400 (2016) (inevitable discovery doctrine is an exception to the exclusionary rule).

Detective Dye's search of Schenk's wallet was limited in scope to Schenk's consent to retrieve his identification. Once the identification was removed, the burnt foil was in plain view. Accordingly, the district court did not err in denying Schenk's motion to suppress and allowing into evidence the drugs found in the course of this limited and permitted search.

The district court's ruling on the suppression issue is affirmed.

IS THERE SUBSTANTIAL COMPETENT EVIDENCE TO DEMONSTRATE THAT SCHENK'S WAIVER OF HIS RIGHT TO A JURY TRIAL WAS EFFECTIVE?

Schenk claims that the waiver of his right to a jury trial was improper. Specifically, he argues that the record "does not include any evidence that the district court addressed and informed Mr. Schenk of his right to waive a jury trial or obtained a waiver thereof." Schenk contends that because the record does not show that the district court informed him of his right to a jury trial, nor did it obtain a valid waiver, his conviction should be reversed and remanded for a jury trial.

*Jurisdiction*

Schenk did not raise this issue before the district court. Generally, even constitutional issues asserted for the first time on appeal are not properly before this court for review. *State v. Coman*, 294 Kan. 84, 89, 273 P.3d 701 (2012). There are, however, exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, one of which is where "consideration is necessary to serve the ends of justice or to prevent the denial of fundamental rights." *State v. Anderson*, 294 Kan. 450, 465, 276 P.3d 200, *cert. denied* 133 S. Ct. 529 (2012). Schenk claims that his conviction by a judge without a proper waiver of his right to a jury trial is a denial of a fundamental right.

This court has previously considered a challenge to the waiver of a right to a jury trial for the first time on appeal to prevent the denial of a fundamental right. *State v. Frye*, 294 Kan. 364, 370-71, 277 P.3d 1091 (2012); *State v. Bowers*, 42 Kan. App. 2d 739, 740, 216 P.3d 715 (2009). A criminal defendant's right to a jury trial is guaranteed by constitution and by statute. U.S. Const. Amend. VI; Kan. Const. Bill of Rights §§ 5, 10. "There is no more fundamental right in the United States than the right to a jury trial." *State v. Larraco*, 32 Kan. App. 2d 996, 999, 93 P.3d 725 (2004). The constitutional right is codified in K.S.A. 22-3403(1), which requires that all felony cases be tried to a jury unless the defendant and prosecuting attorney, with the consent of the court, submit the matter to a bench trial.

The State argues Schenk does not specifically allege that he did not knowingly and voluntarily waive his right to a jury trial, but that he merely asserts the record is insufficient on the subject. In *State v. Mullen*, 51 Kan. App. 2d 514, 524, 348 P.3d 619 (2015), *aff'd* 304 Kan. 347, 371 P.3d 905 (2016), this court found that the effectiveness of the appellant's waiver of his right to a jury trial could be raised for the first time on appeal

to prevent the denial of a fundamental right. Consequently, it is appropriate for this court to consider whether Schenk's waiver of his right to a jury trial was effective.

*Standard of Review*

A substantial competent evidence standard of review is applicable to this issue because whether a defendant waived his or her right to a jury trial is a factual question. *State v. Beaman*, 295 Kan. 853, 858, 286 P.3d 876 (2012). When the facts are undisputed, however, whether a defendant voluntarily and knowingly waived his or her right to a jury trial is a question of law, subject to unlimited review. 295 Kan. at 858.

*Jury Trial Waiver*

The right to a jury trial may be waived if it is done so voluntarily and knowingly. *State v. Irving*, 216 Kan. 588, 589, 533 P.2d 1225 (1975). The waiver of the right to a jury trial should be "strictly construed to afford a defendant every possible opportunity to receive a fair and impartial trial by jury." 216 Kan. at 589. Determining whether this test has been met will depend on the particular facts and circumstances of the case, "but a waiver of the right to a jury trial will not be presumed from a silent record. [Citations omitted.]" 216 Kan. at 589. A court will not accept a jury trial waiver unless the defendant, after being advised by the court of his or her right to a jury trial, personally waives that right, either in writing or in open court. 216 Kan. at 590.

In this case, between early June 2014 and mid-October 2014, Schenk appeared with his counsel in the district court on no fewer than six occasions. Each time, his counsel openly represented to the district court that Schenk was pursuing a bench trial (or, "trial to the court") on stipulated facts. A jury trial had initially been scheduled for late June; however, Schenk's counsel, in open court, told the district judge that there would be "No jury," and agreed the district court should cancel the jury summons that

16

were already being prepared. While allowing Schenk's counsel to pursue stipulated facts to present to the district court for bench trial, the district judge clarified that if that process didn't work, they would revisit the issue. The district judge then declared that the jury trial would be stricken and asked Schenk if he would waive his speedy trial rights. Schenk said he understood and agreed.

On at least two other occasions by the end of June 2014, similar exchanges between Schenk, his counsel, and the district court took place. In a motion for continuance, Schenk's counsel represented that they would proceed without a jury trial, and that Schenk waived his right to a speedy trial. Again, in open court, Schenk, present with his counsel, affirmed to the district court that they were in agreement with the prosecutor to "submit this to trial to the bench on a set of stipulated facts and objections. . . . We have previously waived speedy trial in this matter." The district judge, again, asked Schenk if he waived his right to a speedy trial, to which Schenk replied, "Yes." A bench trial was scheduled and then continued to allow the parties more time to agree upon stipulated facts. Finally, in mid-October 2014, Schenk's counsel informed the district court that Schenk signed the agreed stipulation of facts, and that it would be submitted to the Court for trial to the bench on the "set of stipulated facts."

The record does not reflect that Schenk provided a written waiver of his right to a jury trial. Under *Irving*, Schenk would have had to have waived his right in open court. 216 Kan. at 590. The plan to move forward without a jury trial and have a verdict issued on stipulated facts after a bench trial was discussed numerous times in open court while Schenk was present. However, the two times the district judge addressed Schenk directly on the issue, the question was whether Schenk waived his right to a *speedy* trial. In the context of moving forward with a trial to the bench, the record reflects that various written documents demonstrate a waiver of his speedy trial rights.

17

There are two possible interpretations of the use of the word "speedy" in the record while discussing moving forward with a bench trial: (1) that the word "speedy" was inadvertently conflated with the word "jury" while discussing the issues involved with scheduling; or, (2) that the district court understood, in context, Schenk's intent to waive his right to a jury trial, pending the process of developing agreed upon stipulated facts, but acknowledged that if that process fell through after additional time passed, Schenk could request a jury trial with the understanding that it would not be a speedy jury trial. The record is not informative.

The State argues that there is no fundamental right to a colloquy between a defendant and the district court regarding the validity of a jury trial waiver. This argument fails because it presumes there was already an effective waiver of the jury trial right. While the record reflects, in the aggregate, that Schenk was aware he was not going to have a jury trial, the record does not reveal that the district court informed Schenk of that right, nor did it secure an effective verbal waiver of the right from Schenk in open court. Based on these facts, reversal of Schenk's convictions is appropriate. See *Mullen*, 51 Kan. App. 2d at 517, 524-26 (reversing a defendant's convictions because the district court did not explain to the defendant his right to a jury trial or obtain the defendant's verbal waiver on the record). Therefore, we remand this case so that Schenk can effectively waive his right to, or proceed to, a trial by jury.

Affirmed in part, reversed in part, and remanded.